VERMA, Appellee,

v.

VERMA, Appellant.

[Cite as *Verma v. Verma*, 179 Ohio App.3d 637, 2008-Ohio-6244.]

Court of Appeals of Ohio,
Second District, Greene County.

No. 08CA19.

Decided Nov. 26, 2008.

David S. Peterson, for appellee.

Catherine A. Dempsey, for appellant.

GRADY, Judge.

{¶ 1} This is an appeal from a final judgment and decree of divorce. The issues presented concern spousal support and property division. Those issues, in turn, depend on when the parties were married.

{¶ 2} The former husband, Hari K. Verma, and the former wife, Anita Verma, are natives of India. Hari[1] immigrated to the United States in 1995. He became a United Sates citizen in 2001.

{¶ 3} In January 2005, Anita and Hari were married in a civil marriage ceremony in India. Anita moved to Greene County in December 2005 to reside with Hari, who is employed there in a hotel business owned by his mother. Hari and Anita lived in a house Hari had purchased in 2004 on a land contract.

---

1. For clarity and convenience, the parties are identified by their first names.

{¶ 4} Hari commenced an action for divorce on September 1, 2006. He alleged that he and Anita were married on January 23, 2005, in India, and that no minor children were born of the marriage. As grounds for divorce, Hari alleged gross neglect of duty and extreme cruelty on the part of Anita.

{¶ 5} Anita filed an answer and counterclaim on October 19, 2006, and an amended answer and counterclaim on November 13, 2006. Anita admitted that the parties were married in 2005, as Hari alleged, but in her counterclaim Anita alleged that they were then already married, having been married on or about March 6, 1994, in India. Anita further alleged that one child was born of the 1994 marriage. Anita alleged gross neglect of duty and extreme cruelty on the part of Hari as grounds for divorce.

{¶ 6} On August 20, 2007, Anita filed a notice of intent to rely on foreign law, the Hindu Marriage Act of 1955 of the Republic of India. In a trial brief that she filed on that same date, Anita attached a copy of the Hindu Marriage Act, and she asked the domestic relations court to find that the Hindu Marriage Act of 1955 is determinative of her alleged 1994 marriage to Hari.

{¶ 7} The court heard evidence on Hari's complaint and Anita's answer and counterclaim on August 27 and October 2 and 3, 2007. Evidence was offered showing that after he immigrated to the United States and subsequent to his alleged 1994 marriage to Anita in India, Hari married another woman, Paula Byrd. One child was born of that marriage. Hari and Paula Byrd were divorced in 2004. Byrd was awarded custody of their child, and Hari was ordered to pay child support. Evidence was also offered showing that subsequent to the parties' 2005 marriage in India, Hari obtained title to the residential real property he had first purchased on land contract in 2004, and that he sold the property on the day he bought it, realizing a $23,000 net gain.

{¶ 8} Hari denied that a marriage took place in 1994. Anita testified that she and Hari were married in a traditional Hindu marriage ceremony that was performed in 1994 in India. Her brother testified that he witnessed the ceremony. The trial court refused to admit a DVD video recording of the ceremony that Anita offered, finding that the recording, a copy of a videotape, is not the best evidence of the recording that was originally made.

{¶ 9} Anita also testified that she and Hari lived together in India as husband and wife following their 1994 marriage and that they have a child together. The child remains in India. Anita testified that Hari told her that the 2005 civil marriage ceremony was required for her immigration to the United States, and that she engaged in the civil ceremony for that reason, even though she viewed the prior 1994 marriage as valid.

{¶ 10} The domestic relations court filed its judgment and decree of divorce on February 14, 2008. The court found that the parties were married in 2005. The court rejected Anita's claim that the parties were married in 1994, for three reasons. First, the court declined to take judicial notice of the Hindu Marriage Act as the law of India. Second, the court found that evidence of the alleged 1994 marriage Anita offered could not overcome the proof of the 2005 marriage, which was undisputed. And, third, a finding that Anita and Hari were married when Hari married Paula Byrd "could be a catalyst to void (Hari's) documented marriage to Paula Michelle Byrd in 1996 and may render the child of that marriage illegitimate. This is against public policy."

{¶ 11} Based on its determination that the parties were first married in 2005, the court granted a decree of divorce and awarded Hari the $23,000 in net proceeds from the sale of the residence he purchased prior to the marriage as his separate property. The court awarded Anita spousal support in a lump sum amount of $10,000 to be paid from that separate property of Hari's. The court granted other relief that is not in issue.

{¶ 12} Anita filed a timely notice of appeal.

FIRST ASSIGNMENT OF ERROR

{¶ 13} "The trial court erred in not considering India's Hindu marriage in 1994 was valid."

{¶ 14} "Generally, the validity of a marriage is determined by the *lex loci contractus*; if the marriage is valid where solemnized, it is valid elsewhere; if it is invalid there, it is invalid everywhere." *Mazzolini v. Mazzolini* (1958), 168 Ohio St. 357, 7 O.O.2d 123, 155 N.E.2d 206, paragraph one of the syllabus.

{¶ 15} Traditional Hindu marriages are not licensed or memorialized by public records in India. Civil ceremonies are. Hari offered evidence of the 2005 civil ceremony. It was Anita's burden to prove that the alleged 1994 Hindu marriage ceremony occurred, and that it was valid under the law of India. She would rely on the Hindu Marriage Act of 1955 for that purpose.

{¶ 16} Civ.R. 44.1(B) provides:

{¶ 17} "Determination of foreign law. A party who intends to rely on the law of a foreign country shall give notice in his pleadings or other reasonable written notice. The court in determining the law of a foreign country may consider any relevant material or source, including testimony, whether or not submitted by a party. The court's determination shall be treated as a ruling on a question of law and shall be made by the court and not the jury."

{¶ 18} The Staff Note to Civ.R. 44.1(B), which became effective on July 1, 1970, states:

{¶ 19} "Rule 44.1(B), based in principle upon Federal Rule 44.1, is also quite similar to the judicial notice provisions of Rule 44.1(A)(2) and 44.1(A)(3). Thus, a party gives advance notice of his reliance upon the law of a foreign country. In addition, the court, and not the jury determines the applicability of the foreign law. Note that the rule provides for the use of testimony to aid the court. The law of a foreign country may often need translation and interpretation by an expert in the particular language. The testimony of such expert, out of the hearing of the jury and not subject to the formal rules of evidence, may be very necessary to aid the court in determining the applicability of the particular law."

{¶ 20} The notice of intent to rely on foreign law and the trial brief in support of the notice, to which an English language text of the Hindu Marriage Act adopted by the Republic of India on May 18, 1955 was attached, that Anita filed on August 20, 2007, invoked the terms and procedures of Civ.R. 44.1(B). The trial court rejected Anita's request regarding the Indian law, holding that judicial notice of its terms is not permitted by Evid.R. 201(B)(1) or (2).

{¶ 21} The trial court erred when it rejected Anita's request. Evid.R. 201(A) states: "This rule governs only judicial notice of adjudicative facts; i.e., the facts of the case." Civ.R. 44.1(B) instead applies, by its express terms, to the court's "ruling on a question of law." Therefore, Evid.R. 201(B) has no application to a notice filed pursuant to Civ.R. 44.1(B).

{¶ 22} Hari argues that the error was nevertheless harmless because Anita failed to offer evidence from which the court could find that the alleged 1994 marriage satisfied the Hindu Marriage Act. In particular, Hari points to Section 7 of the Hindu Marriage Act, which provides:

{¶ 23} "Ceremonies for a Hindu marriage. (1) A Hindu marriage may be solemnized in accordance with the customary rites and ceremonies of either party thereto.

{¶ 24} "(2) Where such rites and ceremonies include the saptapadi (that is, the taking of seven steps by the bridegroom and the bride jointly before the sacred fire), the marriage becomes complete and binding when the seventh step is taken."

{¶ 25} Anita testified that she and Hari were married in India on March 6, 1994, in a traditional Hindu ceremony. Anita's brother, Deebak Kumar, testified that he was present at the event and that the "[c]eremony was regular ceremony like a [sic] Hindu culture. We did everything. We give all the jewelry, whatever we can do. We did the Hindu ceremony." When asked how many steps the Hindu ceremony involves, Kumar testified that it involves "seven turns," and that "those seven turns [are necessary] to get [a] complete marriage in Hindu

culture." He also testified that the man "put[s] that red color over her. So that means it is a complete marriage."

{¶ 26} Deebak Kumar was not offered as an expert witness, but Hari did not object to Kumar's competence to testify concerning the rituals of a traditional Hindu marriage ceremony. Kumar's testimony that the ceremony involves seven turns and that the ceremony between Hari and Anita he witnessed was a regular Hindu ceremony in which everything traditionally involved was done supports an inference that the ceremony satisfied the requirements of Section 7 of the Hindu Marriage Act. We believe that that evidence, if believed, satisfied Anita's burden to offer prima facie evidence that the 1994 ceremony was valid for purposes of the law of India, where it occurred. *Mazzolini.* Hari argues that Anita failed to offer evidence that either she or Hari are Hindus to whom the act applies. We believe that is reasonably inferred from the evidence.

{¶ 27} The domestic relations court erred when it declined to take notice of the Hindu Marriage Act as Anita had requested. The error is not harmless. Therefore, the judgment from which the appeal was taken is reversed in part, and the cause is remanded for further proceedings to determine whether the parties were married in 1994, as Anita alleged.

{¶ 28} The first assignment of error is sustained.

SECOND ASSIGNMENT OF ERROR

{¶ 29} "The trial court erred in not admitting the DVD recording of the parties' 1994 wedding in India."

{¶ 30} In support of testimony by Anita and her brother, Deebak Kumar, that Anita's marriage to Hari was solemnized by a Hindu wedding ceremony, Anita offered in evidence a DVD recording of that ceremony, which another of Anita's brothers, Dinesh Kumar, testified is a duplicate of a videotape recording that was made. He explained that the duplicate DVD was generated because the video-tape that was produced in India is incompatible with videotape players used in this country.

{¶ 31} The trial court declined to consider the DVD, holding that Evid.R. 1002 requires the original recording instead. Evid.R. 1002, which restates the traditional "best evidence rule," requires that in proving the contents of a writing, recording, or photograph, the original must be offered as evidence unless a foundation is laid for its non–production. *Bluestein v. Thompson* (1957), 102 Ohio App. 157, 2 O.O.2d 143, 139 N.E.2d 668.

{¶ 32} Weissenberger writes:

{¶ 33} "Videotapes and motion pictures have generally been admitted in Ohio without best evidence issues arising, because usually when offered videotapes and

films are used to illustrate testimony of a witness who has firsthand knowledge of the subject depicted. Nevertheless, situations involving libel, copyright infringement or invasion of privacy may raise best evidence questions because in these types of cases, the contents of the tape or file may be at issue." Weissenberger's Ohio Evidence Treatise (2008 Ed.), Section 1001.15.

{¶ 34} Anita offered the DVD in evidence, not to prove the contents of the original videotape of which the DVD is a duplicate, but instead to illustrate the testimony of Anita and her brother, Deebak Kumar, who both had firsthand knowledge of the subject depicted, that a Hindu marriage ceremony between Anita and Hari took place in 1994. The trial court erred when it held that Evid.R. 1002 bars consideration of the contents of the DVD for that purpose.

{¶ 35} The second assignment of error is sustained.

THIRD ASSIGNMENT OF ERROR

{¶ 36} "The trial court's finding that there was not a valid marriage between the parties in 1994 is against the manifest weight of the evidence."

{¶ 37} The error assigned is rendered moot by our determination of the first and second assignments of error. We exercise the discretion conferred on us by App.R. 12(A)(1)(c) to not decide the error assigned.

FOURTH ASSIGNMENT OF ERROR

{¶ 38} "The trial court's finding that the husband had only $25,000.00 annual income is against the manifest weight of the evidence."

{¶ 39} R.C. 3105.18(C)(1) authorizes the court to award spousal support in an amount and on terms that are appropriate and reasonable. Whether an award satisfies those standards is a question of law that is subject to appellate review. However, an appeal on a combined question of fact and law is prohibited by App.R. 2. In that event, we decline to review the question of fact and determine the question of law only. *Bauer v. Grinstead* (1943), 142 Ohio St. 56, 26 O.O. 252, 50 N.E.2d 334. The particular error Anita assigns challenges a finding of fact.

{¶ 40} Anita concedes that the purpose of her challenge to the trial court's finding of fact that Hari's annual income is $25,000 is to show that the lump sum spousal support award of $10,000 the court ordered is not reasonable. Whether the spousal support the court ordered is appropriate and reasonable depends, in part, on the duration of the parties' marriage. R.C. 3105.18(C)(1)(e). If on remand the court finds that Hari and Anita were married in 1994, the court may order spousal-support in a greater amount because of the greater duration of the marriage. R.C. 3105.18(C)(1)(e). Therefore, though we must decline to review the particular factual error assigned, we will reverse the spousal-support award

and remand for further proceedings on that issue. On remand, the court is not bound by its prior finding of fact concerning Hari's income.

{¶ 41} The fourth assignment of error is overruled.

FIFTH ASSIGNMENT OF ERROR

{¶ 42} "The trial court erred in ruling that the sale proceeds from the home where the parties had lived together did not constitute marital property."

{¶ 43} The court found that the $23,191.28 that Hari realized from a sale of the real property he purchased on a land contract in 2004 is his separate property because there was no proof that marital funds from the 2005 marriage had been used to acquire it. That finding is based in part on the court's finding that the parties were married in January 2005, not in 1994. Our resolution of the first assignment of error requires us to reverse the trial court's award of the sale proceeds to Hari as his separate property and to remand for further proceedings on that issue.

{¶ 44} The fifth assignment of error is sustained.

Conclusion

{¶ 45} The spousal-support and property-division provisions of the judgment and decree of divorce are reversed, and the cause is remanded for further proceedings on those issues. The judgment and decree of divorce is otherwise affirmed.

> Judgment affirmed in part
> and reversed in part,
> and cause remanded.

DONOVAN, J., concurs.

WOLFF, P.J. concurs separately.

WOLFF, Presiding Judge, concurring separately.

{¶ 46} I concur in the judgment and all aspects of the majority opinion except the discussion under the fourth assignment of error to the effect that we cannot address Anita's contention that the trial court's finding as to Hari's annual income is against the manifest weight of the evidence.