[Cite as *Lakkapragada v. Lakkapragada*, 2014-Ohio-331.]

IN THE COURT OF APPEALS FOR MONTGOMERY COUNTY, OHIO

MADHAV LAKKAPRAGADA    :

  Plaintiff-Appellee      :    C.A. CASE NO.  25883

v.               :    T.C. NO.  12DR844

NEELIMA R. LAKKAPRAGADA   :    (Civil appeal from Common
                   Pleas  Court,  Domestic
Relations)
  Defendant-Appellant     :

                :

. . . . . . . . . .

# **O P I N I O N**

Rendered on the   31st   day of    January   , 2014.

. . . . . . . . . .

KEITH R. KEARNEY, Atty. Reg. No. 0003191, 2160 Kettering Tower, Dayton, Ohio 45423
  Attorney for Plaintiff-Appellee

NEELIMA LAKKAPRAGADA, Plot No: 81, Vishnupuri Extension, Manju Ashok Enclave, Malkajgiri, Hyderabad, Andhra Pradesh-500047
  Defendant-Appellant

. . . . . . . . . .

DONOVAN, J.

 **{¶ 1}** This matter is before the Court on the Notice of Appeal of Neelima R.

Lakkapragada, filed August 28, 2013.[1]  Neelima appeals from the July 31, 2013 Final Judgment and Decree of Divorce, issued after she failed to appear at the final hearing on Madhav Lakkapragada's August 7, 2012 complaint for divorce.   The parties were married on August 13, 1998, in Hyderabad, India, and one daughter was born as issue of the marriage on May 1, 2004.   We hereby affirm the judgment of the trial court.

{¶ 2}   The record reflects that Neelima was served with process in India on September 17, 2012. She filed a "Motion for Leave to File Answer & Counterclaim out of Time" on October 17, 2012, along with her Answer and Counterclaim, and the the trial court granted her motion.   Neelima's Answer and Counterclaim provides in part that she "requests this Court to dismiss Plaintiff's Complaint for Divorce at his cost; grant her an absolute divorce from the Plaintiff," and award her custody of the child as well as child support and spousal support. Also on October 17, 2012, Neelima filed her Affidavit of Financial Disclosure, which provides that she is unemployed.   In the section of the affidavit entitled "Other Yearly Income," next to "Ordinary and Necessary Business Expenses," the following handwritten notation appears: "Travel and Commute and other necessary expenses for work when found right now I am volunteering."   In the monthly expenses section of the affidavit, Neelima listed "Estimated future expenses," as well as "Present expenses in Indian Rupees."   She indicated that she has an "ACS Loan" for her law school education, and that the balance due is unknown.[2]

---

[1] For purposes of clarity, we shall refer to the parties by their first names.

[2] We note that Madhav also listed Neelima's law school loan in his Affidavit of Financial Disclosure as one of his monthly expenses, and his affidavit indicates the balance due is $30,000.00, with a monthly payment of $219.35.

{¶ 3} On October 29, 2012, the court issued a Temporary Order in which it indicated that it "finds that there is insufficient basis for the awarding of temporary spousal support and/or making an order of temporary child support herein." The court also did not make an award of temporary custody. On November 9, 2012, Neelima filed a "Motion for Interim Attorney Fees." On November 15, 2012, Neelima filed a "Motion for Rule 75N Hearing," in which she asserted that the "Temporary Order as issued is inappropriate and unreasonable since it does not consider Defendant's Affidavit of Financial Disclosure." On November 29, 2012, the court issued an "Order Granting Interim Attorney Fees," in which it ordered Madhav to pay Neelima $1,000.00 within 30 days.

{¶ 4} On December 12, 2012, Madhav filed a "Rule 75 Motion," in which he moved the court "for a hearing regarding the issues of temporary custody and child support." On January 17, 2013, following a hearing which both parties attended represented by counsel, the Magistrate issued a decision on the parties' motions regarding the Temporary Order. The Magistrate noted that Neelima moved to India with the parties' child in June, 2012, and that prior to that time, the parties had resided together in Montgomery County since 2002. The Magistrate noted that Madhav grosses between $130,000.00 to 138,000.00 per year, and that he will gross about $140,000.00 in 2012. The Magistrate further noted that Neelima resides with her brother and mother in India and has been supported by them since July, 2012. According to the Magistrate's decision, Neelima is a University of Dayton School of Law graduate, but she did not pass the Ohio bar examination. We note that Neelima testified that she obtained her law degree in 2006. The Magistrate noted that Neelima wants to move out of her mother's residence, and that she seeks temporary child support and spousal support from Madhav. The Magistrate's decision provides that the

child is currently enrolled in the Delhi Public Schools at a cost of about $800.00 a quarter, that Neelima's brother currently pays the tuition, and that the child will be out of school for the summer at the end of April or beginning of May, 2013. We note that Neelima testified that Madhav paid for the first term of the child's school expenses, and that he stopped paying when she moved from his parents' home to her mother's residence. The Magistrate's decision continues as follows:

> Originally, [Madhav] planned to move back to India with the defendant. However, [Neelima] was to sign a document to sell the marital residence. She would not sign the document because the document was a general power of attorney and not a document solely for the purpose of selling the marital residence. [Neelima] was advised by an attorney in India not to return the paper because the scope of the document was in excess of what she believed was intended.

> [Madhav] wanted to move back to India because of family matters. In July, [Madhav] realized that he did not have the documents necessary to sell the marital residence, and he discovered that the documents were with [Neelima]. [Neelima] was to mail the documents back to [Madhav], but he never received the documents, and he cannot sell the marital residence.

> [Neelima] intended to move back to Ohio; however, her present intention is to stay in India, and she objects to having the child visit with [Madhav] . She believes that the child needs her mother all the time and should not leave her mother for a period of time. The child was alone with

[Madhav] for several months when she was four months old.[3] [Madhav] wants to visit with the child during the child's summer when she is out of school. He has been through the parenting classes offered by the court. [Madhav] is willing to allow temporary custody of the minor child to be with [Neelima], for the best interest of the child. [Madhav] went to India and saw the child only in the presence of another person for ten or fifteen minutes. This was in December 2012 when he stayed for ten days trying to see the child and not being allowed by [Neelima]. He recently sent [Neelima] about $4,000.00 in support.

The financial circumstances concerning [Neelima] and her needs are not made clear by her financial disclosure affidavit. It appears that she is being supported by her family for the past several months and has chosen to stay in India. It is also not clear why [Neelima] has not been able to obtain employment, although she appears to be highly educated. [Madhav] is entitled to have parenting time with their minor child. [Neelima] asserts that [Madhav] should see the child with [Neelima]; however, [Neelima] would not permit parenting time for more than a few minutes with the child when [Madhav] was in India.

{¶ 5} The Magistrate awarded temporary custody of the child to Neelima and ordered Madhav to pay spousal support in the amount of $1,000.00 per month and child

_____

[3]We note that Neelima testified that the child was alone with Madhav for four months in 2011, when she was six or seven years old.

support in the amount of $750.00 per month. The Magistrate awarded Madhav parenting time with the child beginning one week after the child gets out of school in the spring until one week prior to the child's return to school in India. The Magistrate further awarded parenting time to Madhav any time he is in India where Neelima is residing, "at which time the child shall be permitted to stay alone with [Madhav] for a reasonable period of time including overnight." Finally, the Magistrate awarded Madhav parenting time with the child any time Neelima and the child are in the Dayton area, "at which time the child shall be permitted to stay alone with [Madhav] for a reasonable period of time including overnight."

**{¶ 6}** On January 24, 2013, counsel for Neelima filed a "Motion to Withdraw as Counsel" which provides that Neelima "has requested that the undersigned terminate and release his services." The court granted the motion. On January 28, 2013, Neelima filed a pro se "Motion to Set Aside the Magistrate Order filed 1/1713/ Motion for Rule 53(D)(2)(b)." Therein she asserted that the facts as set forth in the Magistrate's Decision are incorrect. Specifically, she denied that Madhav had custody of their child for several months when the child was four months old. She asserted that Madhav obtained her power of attorney "under undue influence." She asserted that while Madhav could have filed his complaint for divorce when she resided in Dayton, he filed it in August, after she was in India, "to deny [her] the capability to defend herself after consigning her to stay in India with poor finances and facilities as a pre[-]planned design." Neelima asserted that Madhav tried to forcibly remove the child from her school on December 7, 2012 and scared the child. Neelima asserted that she suffers from depression, and that Madhav has beaten her and the child. She asserted that her marriage is governed by the "Hindu Marriage Act 1955,"

pursuant to which the welfare of minor children is of paramount concern. Finally, she asserted that she has filed a petition for custody of the child in India.

{¶ 7} On February 14, 2013, substitute counsel for Neelima filed a Notice of Appearance. Madhav requested that the court appoint a Guardian ad Litem ("GAL"), and on February 19, 2013, he filed a "Motion to Schedule Stand Alone Final Trial Date." On March 8, 2013, Madhav filed a response to Neelima's motion to set aside the Magistrate's decision. On March 8, 2013, the trial court issued a scheduling order setting a telephone pre-trial conference on June 5, 2013, and setting the matter for trial on July 24, 2013. The scheduling order provides in part: "Continuance of trial must be requested by MOTION, if made before the pretrial date; the motion shall set forth the pretrial and trial dates, the nature of the conflict in dates, the case number and the names and phone numbers of both counsel. After the pretrial date, continuance of a trial must be by MOTION with a proposed entry which complies with Mont. D.R. Rule 4.20, and is filed with the Clerk of Courts." The Order also provides: "Notice is hereby given pursuant to Civil Rule 41(B) and (C) that failure to appear, to be prepared, or to proceed with the pretrial or trial, may result in the dismissal of a party's action." The court also appointed a Guardian ad Litem.

{¶ 8} On April 11, 2013, Madhav filed a "Motion to Enforce Summer Parenting Times," which notes that Neelima initiated litigation in India requesting that the courts intervene regarding Madhav's parenting time, and provides in part that Madhav's "Indian attorney has advised the undersigned that in order for the Court in India to enforce this Court's Order, that they need a letter from [the court] requesting that the Indian Court enforce the Magistrate's decision."

{¶ 9}   On April 23, 2013, the trial court issued a Decision and Judgment ordering that the Magistrate's Order of January 17, 2013 remain in full force and effect and providing in part:

In the present case the magistrate did not err by awarding parenting time to Madhav.   Although Neelima alleges that Madhav habitually physically abused both her and their child, this accusation appears to lack merit because Neelima does not object to the child spending time with Madhav in Dayton as long as Madhav agrees to pay for her to live in the Dayton area, as well.   Additionally, by spending time with Madhav in the summer, the child will not be forced to change schools, or leave her school in the middle of the school year. There is no concrete evidence in the record supporting Neelima's assertion that the child's best interest can only be served by living with Neelima throughout the entire year, and having no regular contact or visitation with Madhav.

{¶ 10}   On May 13, 2013, Madhav filed a "Motion for Contempt; Motion for Temporary Custody," in which he sought an order of temporary custody due to Neelima's "willful interference" with his parenting time.   On the same day, the trial court issued an "Order for Contempt," in which Neelima was ordered to appear and show cause why she should not be held in contempt of court.

{¶ 11}   On June 5, 2013, Neelima filed "Defendant's Motion to Dismiss for Plaintiff's Failure to Comply with the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters; or in the Alternative, Motion to Decline Jurisdiction over the Allocation of Parental Rights and Responsibilities in

Accordance with R.C. § 3127.21." Neelima sought dismissal of Madhav's complaint for divorce, or alternatively that the court decline jurisdiction "for the reason that Ohio is an inconvenient forum. Matters concerning the allocation of parental rights and responsibilities for the minor child * * * would be better addressed where the minor child has been residing with her mother for the last year at [Madhav's] request and where litigation regarding her care and custody is already pending."

{¶ 12} On June 14, 2013, Neelima filed "Defendant's Motion to Dismiss Plaintiff's Motion for Contempt; or in the Alternative, Motion to Continue Hearing." On June 25, 2013, Madhav filed a motion to dismiss Neelima's motion to dismiss of June 5, 2013. On July 1, 2013, counsel for Neelima filed a "Motion to Withdraw as Counsel," citing irreconcilable differences. On July 10, 2013, Neelima filed a "Response to Guardian ad Litem Report." On July 18, 2013, she filed "Defendant's Motion to Apply Hindu Marriage Act 1955 in the Case," in which she "requests that the case be tried as per § (1) of The Hindu Marriage Act of 1955 in a Court that recognizes the Hindu Law as it is the only valid law under which the present case needs to be tried." Also on July 18, 2013, Neelima filed a motion for a continuance of the July 24, 2013 trial date, in which she repeated her assertions that the Hindu Marriage Act 1955 applies to her divorce. We note she failed to file a proposed entry in accord with Mont. D.R. 4.20(C), pursuant to the trial court's scheduling order.

{¶ 13} On July 18, 2013, the trial court issued a Decision and Judgment addressed to Neelima's June 5, 2013 motion to dismiss and Madhav's response thereto. Regarding Neelima's assertions that Madhav failed to comply with the Hague Convention, the trial

court, after noting Neelima's multiple filings herein, determined as follows:

> Case law on this matter is clear. The courts have held that the defendant may waive compliance with the Hague Convention as a result of not raising the issue in a pre-trial motion or in its answer. Additionally, courts have held that individuals voluntarily submit themselves to the jurisdiction of the court by filing pleadings in a matter for an extensive period of time and not challenging service to the Hague Convention early in the proceedings. As previously stated, the Complaint for Divorce in this matter was filed on August 7, 2012. Neelima filed numerous motions with this court and engaged in litigation for a period of 11 months before filing her request to dismiss for failure to comply with the Hague Convention. As a result, this court finds that Neelima has waived any objection to the sufficiency of service and Branch I of her motion requesting that Madhav's Complaint for Divorce be dismissed is found not to be well taken and is hereby dismissed.

{¶ 14} Regarding her argument that the court should decline jurisdiction for the reason that Ohio is an inconvenient forum, the court noted that it "has thoroughly reviewed the statutory factors in O.R.C. § 3127.21(B) and finds that Ohio is a more convenient forum to litigate the issue of allocation of parental rights and responsibilities for the minor child. The minor child resided in Ohio for a considerable period of time and considerable evidence exists in Ohio that is pertinent to the issue of parental rights." Finally, the court determined that "Neelima has more flexibility to come to Ohio. Ohio will not decline jurisdiction in this

matter." The court dismissed Neelima's motion.

{¶ 15} At the final hearing on Madhav's complaint for divorce, counsel for Madhav advised the court that Neelima admitted to incompatability between the parties in her answer and admitted the date of the parties' marriage and the birth date of the parties' child. Madhav testified that he has been a Montgomery County resident for at least six months prior to filing his complaint, and that he and Neelima are incompatible. Joseph Sumski, an acquaintance of Madhav's, then testified that he and Madhav have worked together since 2005, and Sumski corroborated Madhav's above testimony. Madhav then resumed testimony and stated that he has a good relationship with his child, and that there were periods of time during his marriage when Neelima was in India that the child resided with him exclusively. He stated that he has adequate housing for the child and that she has her own bedroom. He stated that he has the ability to provide for the child financially. He stated that when he went to India to see his child, Neelima did not allow him to have visitation and that he did not get to see the child alone. Madhav testified that it is in the child's best interest for him to be awarded custody of her. Madhav requested that any parenting time granted to Neelima be supervised due to her willful refusal to return the child to the court's jurisdiction and to prevent her from taking the child out of the country. Madhav stated that he is not requesting that Neelima pay child support since he can provide for the child, and since Neelima is not working. He asked that the court retain jurisdiction over the issue of child support in the event Neelima becomes employed. Madhav requested that he not be subject to a spousal support order. He testified that he is willing to pay

Neelima $25,000.00 as her half share of the equity in the marital residence in Springboro. He stated that Neelima is not a co-obligor on the mortgage. Madhav stated that he has investment accounts at E*Trade and Interactive Brokers that he is willing to divide equally. Madhav stated that he has two 401(k) plans, one through SEI Services and one through Siemens Savings Plan, with a total of vested retirement benefits of approximately $190,000.00, which he is willing to divide equally pursuant to a Qualified Domestic Relations Order. He stated that he is willing for Neelima to retain her IRA account with a balance of $5,000.00. Madhav requested that he and Neelima retain the property and household goods currently in each of their possessions. Madhav requested that the court order Neelima to be solely responsible for her law school student loan debt.

{¶ 16} In the Final Judgment and Decree of Divorce, the court initially noted that Neelima did not appear, that she was served with the Scheduling Order filed on March 11, 2013 advising her of the date for the final hearing, and that "due process and service of Summons was had upon [Neelima] herein, all according to law." The court noted that Madhav had sufficient legal residence in Montgomery County when the action was filed, and that the court had jurisdiction over the action and the parties.

{¶ 17} The court designated Madhav as the residential parent and legal custodian of the parties' minor child. The court determined that Neelima is residing in India and that she violated the court's prior order regarding parenting time for Madhav. The court ordered Neelima to immediately return the child to Madhav's care in Ohio. In the event Neelima fails to return the child, the court ordered "any and all authorities, both domestic and in India, to exercise jurisdiction over the parties' minor child and assist the Plaintiff in

obtaining physical possession of the parties' minor child so that he can return the child" to Dayton, Ohio to reside with him. Regarding Neelima's parenting time, the court found "specifically because of the Defendant's failure to abide by this court's order regarding parenting times and the fact that she currently resides in India, the Defendant's parenting times shall only take place in the Dayton, Ohio area and under the supervision of the Plaintiff or a third party supervisor." The court determined that the issue of parenting time is subject to the court's continuing jurisdiction. The court terminated the temporary support order, and it determined that "since [Neelima] is unemployed and living in India that there will be no exchange of child support between the parties," although it ordered that the issue of child support remain subject to the court's jurisdiction. The court ordered that there be no exchange of spousal support between the parties, and that the issue of spousal support is not subject to the court's continuing jurisdiction.

{¶ 18} The court found that the marital residence had $50,000.00 in equity and ordered Madhav to pay Neelima $25,000.00 within 90 days of the filing of the final decree. The court ordered Madhav to cause one half of the balance of his E*Trade and Interactive Brokers accounts to be transferred to accounts in Neelima's name within 90 days of the filing of the final decree. The court ordered that each party retain any checking and savings accounts in their own names. The court ordered Madhav to cause two Qualified Domestic Relations Orders to be filed "whereby he will cause one-half of the vested account balances in both of his retirement accounts" to be distributed to Neelima. The court ordered that the parties "shall retain all of their items of household goods, furniture, furnishings, equipment and appliances currently in their possession * * * with [Madhav] retaining all of said items

currently located" at the marital residence, and Neelima retaining all of the items currently in her possession in India. The court ordered that each party shall be responsible for the timely payment of all credit cards and any other debts in their own name, and that Neelima shall be responsible for her law school student loan.

{¶ 19} We note that on November 12, 2013, Neelima, pro se, filed "Defendant-Appellant's Application to Grant Partial Stay of the Final Judgment and Decree of Divorce Dated July 31, 2013 Relating to Grant of (A) Child Custody to Plaintiff and (B) Child and Spousal Support."   On November 20, 2013, this Court determined that execution of the trial court's custody determination is "temporarily stayed pending the filing of any memorandum opposing the motion for stay and this court's consideration of the motion for stay on its merits.  If no response is filed, this temporary stay shall remain in effect until further order of this Court."  This Court noted that no other provisions of the final decree are affected by the stay and overruled Neelima's request for the continuation of temporary child support and spousal support.  Madhav filed a "Motion in Opposition to Appellant's Motion for Partial Stay."  On December 18, 2013, this Court terminated Neelima's motion for stay, noting that the trial court docket does not indicate that Neelima initially filed a motion for stay therein, pursuant to App.R. 7, which provides that application for a stay "must ordinarily be made in the first instance in the trial court."  This Court overruled Neelima's motion "without prejudice to her ability to file a motion requesting a stay" below.

{¶ 20}   We further note that Neelima's brief provides that she "has in her possession a medical record for the treatment she had to undertake from a doctor in Ohio to nurse the injuries she received at the hand of [Madhav] on one of the occasions in the year

2009 due to their severity. [Neelima] therefore submits that the trial court be suitably advised to take the medical record as evidence and also take the evidence of other witnesses." App.R. 9 provides that the record on appeal is comprised of the "original papers and exhibits thereto filed in the trial court, the transcript of proceedings, * * * including exhibits, and a certified copy of the docket and journal entries prepared by the clerk of the trial court." The medical record is not part of the record on appeal, and we are precluded from considering it.

{¶ 21} Neelima asserts four assignments of error herein. Her first assigned error is as follows:

"THE COURT HAS ERRED IN ASSUMING JURISDICTION OVER THE CAUSE OF ACTION AND OVER THE PARTIES."

{¶ 22} Neelima requests this court to "consider the importance of ascertaining the position of law before passing its decision and suitably alter the judgment and decree passed on July 31, 2013." Neelima asserts that the parties and the child are subject to the "Hindu Marriage Act, 1955," and that the trial court failed to consider "the Hindu practices and customs including the rules and regulations of the Hindu Marriage Act, 1955, under the auspices of which, their marriage has been solemnized, thereby binding the parties to these principles." Neelima asserts her "inability and the extreme difficulty for the Appellant to defend such an action in the U.S." Neelima cites Indian case law for the proposition that "the husband should attend the forum where the wife resides on the grounds of convenience and safety." She asks this Court to "direct the courts in Hyderabad, India to rightfully exercise its jurisdiction and preside over the matter as per the applicable Hindu laws." She

asserts that the final decree is not enforceable in India. Finally, she asserts that "the opinion of the court of Ohio that it is the appropriate forum and that the Appellant has to come to the USA for the sake of ascertaining parental rights and responsibilities is subject to the decision of the competent Courts in India."

{¶ 23} Madhav asserts that Neelima waived any argument that Ohio is an inconvenient forum because she failed to appeal from the July 18, 2013 decision in which the trial court indicated that it analyzed the factors set forth in R.C. 3127.21(B) and determined that Ohio is the more convenient forum. Madhav asserts alternatively that the factors set forth in R.C. 3127.21(B) support the trial court's decision to maintain jurisdiction in Ohio.

{¶ 24} R.C. 3127.21(B) provides in part: "Before determining whether it is an inconvenient forum, a court of this state shall consider whether it is appropriate for a court of another state to exercise jurisdiction." R.C. 3127.21 is part of the Uniform Child Custody Jurisdiction Act, effective April 11, 2005, which addresses interstate custody proceedings within the United States. We conclude that India is not a "state" within the meaning of R.C. 3127.21(B), and we further conclude that the statute has no application herein.

{¶ 25} Neelima specifically cites the trial court's determination of jurisdiction in the final decree. R.C. 3105.03 governs the jurisdiction of the trial court in divorce proceedings and provides, "The plaintiff in actions for divorce * * * shall have been a resident of the state at least six months immediately before filing the complaint. * * * The court of common pleas shall hear and determine the case, whether the marriage took place, or the cause of divorce * * * occurred, within or without the state." Evidence was adduced

regarding Madhav's length of residence in Ohio, and in the Final Decree, the trial court correctly determined that it had jurisdiction.

{¶ 26} To the extent that Neelima argues that the court should have applied the Hindu Marriage Act of 1955, we note that Civ.R. 44.1(B) governs the determination of foreign law and provides in part: "A party who intends to rely on the law of a foreign country shall give notice in his pleadings or other *reasonable* written notice." (Emphasis added). Neelima relies in part on *Verma v. Verma,* 179 Ohio App.3d 637, 2008-Ohio-6244, 903 N.E.2d 343 (2d Dist.), and we conclude that her reliance thereon is misplaced. In *Verma*, the divorcing parties were natives of India, having been married there in a civil ceremony in 2005. *Id*., ¶ 3. The wife asserted that the parties were in fact previously married in a traditional Hindu marriage ceremony in India in 1994, which the husband denied. *Id*., ¶ 8. The wife filed a notice of intent to rely on foreign law, namely the Hindu Marriage Act of 1955, a copy of which, unlike Neelima, she provided to the court, along with an English language text of the Act adopted by the Republic of India on May 18, 1955. *Id*., ¶ 20. The wife asked the court "to find that the Hindu Marriage Act of 1955 is determinative of her alleged 1994 marriage." *Id.,* ¶ 7. The trial court declined to take notice of the Hindu Marriage Act, and this court noted that "[t]raditional Hindu marriages are not licensed or memorialized by public records in India. Civil ceremonies are. [The husband] offered evidence of the 2005 civil ceremony. It was [the wife's] burden to prove that the alleged 1994 Hindu marriage ceremony occurred, and that it was valid under the law of India. She would rely on the Hindu Marriage Act of 1955 for that purpose." *Id.*, ¶ 15. This Court found that the trial court erred in declining to take notice of the Act and

remanded the matter for further proceedings to determine the validity of the 1994 marriage. *Id.*, ¶ 27.

**{¶ 27}** Unlike the wife in *Verma*, Neelima engaged in extensive litigation herein, without giving any initial notice regarding her intention to rely upon the "Hindu Marriage Act, 1955." It was not until January 28, 2013, after the Magistrate issued a decision on the issues of temporary custody and support, that Neelima raised the issue. By this time she had filed an answer and counterclaim seeking divorce, a motion for attorney fees, and a motion addressed to child and spousal support. Her "Motion to Apply Hindu Marriage Act 1955 in the Case," which the court did not specifically address, and implicitly overruled, was filed on July 18, 2013, less than a week before trial. We note that the original complaint for divorce was filed on August 7, 2012. We cannot conclude that the trial court erred in failing to apply the Hindu Marriage Act of 1955, since Neelima failed to provide reasonable notice of her intent to rely upon the Act in compliance with Civ.R. 44.1.

**{¶ 28}** Since the trial court properly exercised jurisdiction, and since Neelima did not comply with Civ.R. 44.1(B), Neelima's first assigned error lacks merit and is accordingly overruled.

**{¶ 29}** Neelima's second assigned error is as follows:

THE COURT HAS ERRED IN DESIGNATING THE APPELLEE AS THE RESIDENTIAL PARENT AND LEGAL CUSTODIAN OF THE PARTIES' MINOR CHILD BASED ON THE BEHAVIOR OF THE APPELLANT. THE COURT HAS ALSO ERRED IN FINDING THAT THE APPELLANT VIOLATED THE COURT'S PRIOR ORDER

REGARDING PARENTING TIMES ORDERING THE RETURN OF THE CHILD TO THE APPELLEE AND PROVIDING THE APPELLANT WITH SUPERVISED PARENTING TIME WITHIN DAYTON, OHIO AREA ONLY.

{¶ 30}   Neelima asserts that Madhav "made a false representation to the Court * * * that his parental rights were interfered with but had also failed to exercise the summer parenting time granted to him by the Court * * * ."  She asserts that Madhav "even manhandled both the Appellant and the minor child on previous occasions and subjected them to cruelty."   Neelima asserts that Madhav tried to forcibly remove the child from her school in India, and that the "scared child started crying and moved away from the Appellee's advances."   She asserts that an award of custody in her favor is in the child's best interest, and that Madhav should "not be given any exclusive parenting time" in her absence.   Finally, she asserts that "the minor girl child is nearing a critical period in her growth requiring her mother's presence without which the child would be subject to great misery and insecurity.   The need of a mother is never greater or of more importance than at [t]his critical juncture in a girl's life."   Neelima asserts that "this is also an age of great significance in the Hindu culture as several ceremonies are performed involving adults of the family for the betterment and future of a girl."

{¶ 31}   Regarding our review of the grant of custody to Madhav, we note the Ohio Supreme Court's instruction as follows:

The discretion which a trial court enjoys in custody matters should be accorded the utmost respect, given the nature of the proceeding and the

impact the court's determination will have on the lives of the parties concerned. The knowledge a trial court gains through observing the witnesses and the parties in a custody proceeding cannot be conveyed to a reviewing court by a printed record. In this regard, the reviewing court in such proceedings should be guided by the presumption that the trial court's findings were indeed correct. (Citations omitted.) *Miller v. Miller*, 37 Ohio St.3d 71, 74, 523 N.E.2d 846 (1988).

In *Miller*, the Ohio Supreme Court did indicate that a trial court's broad discretion is not unlimited and must be guided by R.C. 3109.04. *Id*. Thus, a trial court's decision can be reversed for abuse of discretion. *Id. Edwards v. Edwards*, 2d Dist. Montgomery No. 25309, 2013-Ohio-117, ¶ 31-32.

**{¶ 32}** "Abuse of discretion" has been defined as an attitude that is unreasonable, arbitrary, or unconscionable. *Huffman v. Hair Surgeons, Inc.*, 19 Ohio St.3d 83, 482 N.E.2d 1248 (1985). A decision is unreasonable if there is no sound reasoning process that would support that decision. *AAAA Enterprises, Inc. v. River Place Community Urban Redevelopment Corp.*, 50 Ohio St.3d 157, 553 N.E.2d 597 (1990). *Feldmiller v. Feldmiller*, 2d Dist. Montgomery No. 24989, 2012-Ohio-4621, ¶ 7.

**{¶ 33}** R.C. 3109.04(B)(1) provides: "When making the allocation of the parental rights and responsibilities for the care of the children under this section in an original proceeding * * *, the court shall take into account that which would be in the best interest of the children." R.C. 3109.04 (F)(1)(a)-(j) set forth the non-exclusive "best interest" factors

for the trial court to consider when allocating parental rights and responsibilities. These factors include the wishes of the parents, the child's relationship with the parents, the child's adjustment to home and community, the mental and physical health of all persons involved, the parent more likely to facilitate visitation, whether either parent failed to provide child support, whether the residential parent has denied the other parent parenting time, and whether either parent lives or is planning to live outside of the state. R.C. 3109.04(F).

{¶ 34} At the final hearing, Madhav testified that he and his daughter have a good relationship, that he has adequate housing for her, which includes her own bedroom, and that he can provide for her financially. He stated that the child has resided with him exclusively in the past. He stated that he is current in his child support obligation. Madhav testified that Neelima did not facilitate his parenting time when he went to India to see his child, and he stated that he believes that awarding him custody is in the child's best interest.

{¶ 35} We note that the G.A.L. recommended that Madhav be designated as the residential parent and legal custodian of the child, and that he opined that Madhav "appears to be the parent more focused on the routine necessary and appropriate for the child." The report provides that the G.A.L. interviewed Madhav on March 28, 2013, considered email correspondence from him, as well as miscellaneous documentation, "including India Court documents, financial information etc.", provided by Madhav. The report provides that the G.A.L. visited Madhav's residence on May 20, 2013. His report notes that Madhav informed him that when he was in India to see his child, Neelima only allowed him to do so for 10 or 15 minutes in the presence of another person. The report provides that Madhav is a software engineering consultant, having been so employed for eight years. The report

provides that he has no criminal record, that his physical health is good, and that he "has no mental health treatments/medications/ counseling." The report provides that Madhav stated that Neelima "has several health issues, including a thyroid issue for which she takes medication and diabetes. Still further, during and subsequent to 2009, [Madhav] asserts that Neelima was treated for depression by a psychologist and perhaps a psychiatrist in India who prescribed medications for her."

{¶ 36} The report provides as follows:

[The child] went to Five Points Elementary School in Springboro, where she finish[ed] the second grade before being taken back to India. She was a good student. * * * [Madhav] and [the child] used to enjoy going to parks Cox Arboretum (sic), and he used to enjoy doing a Saturday morning breakfast with her. The child used to enjoy taking car rides. He typically took the child to the doctor (as Neelima had some issue or conflict in the pediatrician's office and refused to take the child there thereafter). He met with one of the psychiatrists in India and, in response to his questions told him that he did not believe Neelima's factual assertions with respect to her experience in the pediatrician's office. Sadly, Madhav described that he was the "sick parent" in that he took care of [the child] when she was ill, he and the child had a favorite rocking chair that they spent many hours in, etc. Neelima provided most of the food and clothing for the child, and was a stay at home parent primarily.

{¶ 37} The report provides that Madhav advised the G.A.L. that he has difficulty

reaching his daughter on the phone, that Neelima monitors their conversations, and that in one conversation, the child "was crying because Neelima told her that Madhav did not want to live with them anymore." The report provides that Madhav advised that in another call, the child reported not getting enough sleep and missing some school. The report provides that the G.A.L. received email correspondence from Madhav in April, 2013 expressing concern that Neelima had changed the child's school without advising him.[4] The report provides that Madhav provided "written issues and concerns as requested," in which he described "that there were significant instances wherein Neelima displayed extreme behaviors that were inexplicable to him, for example, claiming that one of the pediatricians at the child's doctor's office was 'following her everywhere,' that hang-up calls to the residence were [in] fact someone wanting to know if she was home, that police were constantly passing her home/circling her/tracking her etc." The report provides that "Madhav describes that [the child] would often ask that her mother be a cafeteria helper volunteer, as other parents did, but she would never volunteer for same." The report provides that Madhav reported that "there have been numerous times when Neelima couldn't handle the stress and anxiety of the school-day morning routine," such that Madhav would have to intervene.

{¶ 38} The report provides as follows:

* * * Madhav provided e-mail documentation that, in fact, he understood the parties to be planning to relocate back to India, and that he

---

[4]We note that Neelima's "Response" to the G.A.L. report provides in part as follows: "Regarding the change of School, let me explain: the new School, Bhavan's Shree Ramakrishna Vidyalaya is nationally renowned for imparting quality education * * *."

was in the process of attempting to locate employment in India until he became distrustful of Neelima. He also described that Neelima has received significant sums of monies from him, including $8,500.00 between December 2012 and February 2013, not including payments for her attorney fees, support payments ordered under the Temporary Order, travel expense for Court appearances, and the payments he makes monthly on her student loan indebtedness.

**{¶ 39}** Regarding Neelima, the G.A.L.'s report provides as follows:

Despite correspondence to counsel of March 14, 2013, and despite subsequent e-mails and reminder voicemail messages and telephone calls between me and my office and Neelima's counsel and her office, requesting that Neelima schedule a telephone conference and place the call, and thus cooperate with the Guardian's investigation, the Guardian has had no contact and/or information whatsoever from Neelima herein.

**{¶ 40}** In Neelima's absence, no evidence was adduced at trial contrary to Madhav's testimony, which the trial court clearly credited. Further, Madhav reported to the G.A.L. that the child did well in school in Ohio, and has a good relationship with Madhav, who has no physical or mental heath issues, or criminal history. Madhav's report to the G.A.L. is consistent with his trial testimony that Neelima did not facilitate parenting time and willfully withheld the child from Madhav. Finally, Neelima established a residence outside of the country and ignored the court's order that she return the child. For the foregoing reasons, we cannot conclude that the trial court abused its discretion in designating

Madhav as the residential parent and legal custodian of the parties' minor child.

{¶ 41} Regarding the grant of supervised parenting time to Neelima in Ohio, we note that "[t]he issue of parenting time is a matter entrusted to the discretion of the trial court. Thus, absent an abuse of that discretion, we will not reverse a trial court's decision on parenting time." *Qi v. Yang*, 2d Dist. Greene No. 2012-CA-24, 2012-Ohio-5542, ¶8, appeal not allowed, 135 Ohio St. 3d 1470, 2013-Ohio-2512, 989 N.E.2d 70 and appeal not allowed, 135 Ohio St. 3d 1471, 2013-Ohio-2512, 989 N.E.2d 70.

{¶ 42} Neelima's refusal to return the child to Ohio, in defiance of the trial court's order, supports Madhav's testimony that he believes that supervised parenting is necessary to prevent Neelima from leaving the country with the child when the child is returned to him. The G.A.L. recommended that Neelima "be ordered, forthwith, to return [the child] to the Dayton area." The G.A.L. reported "some concern with respect to Neelima's ability to honor and facilitate Court-approved parenting time rights. First, she has in fact relocated to India thus denying Madhav and [the child] an ongoing relationship." The G.A.L. noted Madhav's reported difficulty communicating with the child by phone, and his inability to properly exercise his parenting time rights in India in December, 2012 based upon Neelima's actions. While the G.A.L. recommended parenting time for Neelima, "assuming she continues to reside in India, for an extended period of time during the summer months, and perhaps a week in December," we cannot conclude that it was unreasonable, arbitrary or unconscionable for the trial court to order supervised parenting time for Neelima in Dayton, Ohio.

{¶ 43} Since the trial court properly granted custody in favor of Madhav and

26

awarded Neelima supervised parenting time in Ohio, Neelima's second assignment of error is overruled.

{¶ 44} Neelima's third assigned error is as follows:

"THE COURT HAS ERRED IN ITS FINDINGS WITH REGARD TO THE WITHDRAWAL OF CHILD AND SPOUSAL SUPPORT."

{¶ 45} Neelima asserts that she "is currently unemployed and dependent on her mother and brother for all needs. At the same time, [Madhav] has all the means and ability to provide for such support evidenced from his income and earnings." She asserts that the trial court "erred in holding that [Madhav] has nil obligation towards child support. Admittedly, the child is being educated in India and the education costs are to be borne by [Madhav]." Madhav asserts that Neelima's "argument is misplaced as the minor child is living with her against the trial court's orders."

{¶ 46} Regarding spousal support, we note that "[d]omestic relations courts are granted broad discretion concerning awards of spousal support, and their orders will not be disturbed on appeal absent an abuse of discretion." *Perry v. Perry*, 2d Dist. Clark No. 07-CA-11, 2008-Ohio-1315, ¶ 5. The awarding of spousal support is governed by R.C. 3105.18(C)(1), which sets forth the following factors for the trial court to consider:

(a) The income of the parties, from all sources, including, but not limited to, income derived from property divided, disbursed, or distributed under section 3105.171 of the Revised Code;

(b) The relative earning abilities of the parties;

(c) The ages and the physical, mental, and emotional conditions of the parties;

(d) The retirement benefits of the parties;

(e) The duration of the marriage;

(f) The extent to which it would be inappropriate for a party, because that party will be custodian of a minor child of the marriage, to

seek employment outside the home;

(g) The standard of living of the parties established during the marriage;

(h) The relative extent of education of the parties;

(i) The relative assets and liabilities of the parties, including but not limited to any court-ordered payments by the parties;

(j) The contribution of each party to the education, training, or earning ability of the other party, including, but not limited to, any party's contribution to the acquisition of a professional degree of the other party;

(k) The time and expense necessary for the spouse who is seeking spousal support to acquire education, training, or job experience so that the spouse will be qualified to obtain appropriate employment, provided the education, training, or job experience, and employment is, in fact, sought;

(l) The tax consequences, for each party, of an award of spousal support;

(m) The lost income production capacity of either party that resulted from that party's marital responsibilities;

(n) Any other factor that the court expressly finds to be relevant and equitable.

**{¶ 47}** We agree with the Magistrate's determination that Neelima's financial

circumstances are unclear from her financial disclosure affidavit. Neelima is highly educated, having obtained a law degree in 2006. She testified at the hearing on temporary support that she is looking for work in the legal or teaching field, and it is unclear why she has been unable to obtain employment. It was significant to the trial court in denying Neelima's request for spousal support that Madhav is "paying for all of the parties' minor child's living expenses"; Neelima is not subject to a child support obligation. As noted above, Madhav advised the G.A.L. that he has provided significant sums to Neelima, exclusive of the court-ordered temporary support and attorney fees, including travel expenses and monthly payments of her student loans. Neelima retained her full interest in her IRA account. For the foregoing reasons, we cannot conclude that the trial court's failure to award spousal support to Neelima is an abuse of discretion.

**{¶ 48}** Regarding child support, a "trial court has discretion related to the calculation of child support, and, absent an abuse of discretion, an appellate court will not disturb a child support order." *Bertram v. Bertram*, 2d Dist. Clark No. 2007-CA-135, 2009-Ohio-55, ¶ 16. We agree with Madhav that Neelima's assertion, that since the child is residing with her in India, she is entitled to child support, lacks merit. Madhav is the legal custodian and residential parent of the child and solely responsible for her expenses, and Neelima has defied the court's orders regarding the child. For the foregoing reasons, we cannot conclude that the trial court abused its discretion in denying child support to Neelima. Neelima's third assigned error is overruled.

**{¶ 49}** Neelima's fourth assigned error is as follows:

"THE TRIAL COURT ALSO ERRED IN ITS FINDINGS WITH REGARD TO

THE BANK ACCOUNTS, DIVISION OF REAL ESTATE, HOUSEHOLD GOODS, FURNITURE, FURNISHINGS AND EQUIPMENT, AS WELL AS THE DEBTS."

**{¶ 50}** Neelima asserts as follows:

With respect to the division of assets, it is humbly submitted that there be equitable division of all the assets and monies at a minimum level as existed on 1 June, the day on which Appellant left the USA for India in the accounts of the parties in the Fifth-Third Bank, Investments in ING Direct, K-1 Systems; SEI Services Inc[.] for retirement, Interactive Brokers, Siemens Savings Plan together with all such earnings during the marital time that may materialize or paid in future. All these constitute Marital Assets, thus, there should be equitable split of all assets and monies there.

**{¶ 51}** With respect to the parties' real estate, and household goods and furniture, Neelima requests that "the same be valued correctly and divided equally between" the parties. She asserts that Madhav "must be required to pay the debts accrued with regard to the payment of the student loan of [Neelima] with the Wachovia Student Loan Trust as it was [Madhav] who insisted and pushed [Neelima] to pursue the education." She asserts that "it was [Madhav's] actions and behavior due to which [she] was unable to clear her exam and make full use of the education." Neelima asserts that it would be "unjust" to require her to pay for "the U.S. legal education, which she could no longer practically use, being in India."

**{¶ 52}** We note that Neelima asserts that all of the above assets at issue are marital property. "The [Ohio] Revised Code defines marital property as real or personal property

owned by either or both spouses or in which either or both spouses have an interest, including the retirement benefits of the spouses, which was acquired during the marriage. R.C. 3105.171(A)(3)(a)." *Gibson v. Gibson,* 2d Dist. Clark No. 95-CA-87, 1996 WL 139780, *6 (March 29, 1996).

{¶ 53}   As this Court has noted:

It is well-settled that the starting point of a trial court's analysis in the division of marital property in a divorce is a potentially equal division of assets, unless an equal division would be inequitable. R.C. 3105.171(C)(1); *Cherry v. Cherry*, 66 Ohio St.2d 348, 421 N.E.2d 1293 (1981), paragraph one of the syllabus; *Quigley v. Quigley*, 6th Dist. Lucas No. L-03-1115, 2004-Ohio-2464, ¶ 70. A court shall consider a wide variety of factors, including those set forth at R.C. 3105.171(F), in determining what is equitable, and its division of marital property will not be reversed absent a finding that the court abused its discretion. *Cherry* at 353, 355 ("[T]he mere fact that a property division is unequal, does not, standing alone, amount to an abuse of discretion."); *Martin v. Martin*, 18 Ohio St.3d 292, 294, 480 N.E.2d 1112 (1985). *Albers v. Albers*, 2d Dist. Greene No. 2012 CA 41, 2013-Ohio-2352, ¶ 16.

"Upon review, an appellate court should not conduct an item-by-item review of a trial court's property division. *Briganti v. Briganti* (1984), 9 Ohio St.3d 220." *Bolle v. Bolle*, 2d Dist. Clark Nos. 2731, 2737, 1992 WL 127715, *3 (June 9, 1992).

{¶ 54}  We initially note that Neelima appears to assert that the parties' marriage

terminated on "June 1," when she "left the USA for India," for purposes of dividing the parties' marital property. Based upon the record before us, we assume that she is referring to June 1, 2012. R.C. 3105.171(G) provides that, when dividing marital property, the trial court "shall specify the dates it used in determining the meaning of 'during the marriage.'" We note that the final decree specifies that the parties were married on August 13, 1998, but it does not specify when the marriage ended. "Normally, the final hearing date is presumed to be the termination date of the marriage for purposes of property division, unless the court uses a de facto termination date. See, e.g., R.C. 3105.171(A)(2), and *Badovick v. Badovick* (1998), 128 Ohio App.3d 18, 31, 713 N.E.2d 1066." *Avery v. Avery*, 2d Dist. Greene No. 2001-CA-100, 2002-Ohio-1188, 2002 WL 360296 at *5.

{¶ 55} R.C. 3105.171(A) provides as follows:

(2) "During the marriage" means whichever of the following is applicable:

(a) Except as provided in division (A)(2)(b) of this section, the period of time from the date of the marriage through the date of the final hearing in an action for divorce * * *;

(b) If the court determines that the use of either or both of the dates specified in division (A)(2)(a) of this section would be inequitable, the court may select dates that it considers equitable in determining marital property. If the court selects dates that it considers equitable in determining marital property, "during the marriage" means the period of time between those dates selected and specified by the court.

**{¶ 56}** We conclude that although the court did not expressly state the ending date of the marriage, it is clear from the record that the court considered "during the marriage" to include the time up to and including the final hearing. The court terminated the temporary orders as of July 24, 2013, and it designated June 30, 2013 as the valuation date for the SEI-Services and Siemens Savings Plans retirement accounts. There is nothing to suggest that the date of the final hearing is inequitable for purposes of dividing the marital property.

**{¶ 57}** Regarding the specific division of marital property, Madhav testified that he is the sole titled owner of the parties' marital residence at 130 W. Pugh Drive, in Springboro, and that there is $50,000.00 in equity in the home. The court awarded half of the equity to Neelima. The court further ordered Madhav to transfer half of the balances in the E*Trade account and the Interactive Brokers account to Neelima. The court ordered the parties to retain their own checking and savings accounts in their own names. The court ordered Madhav to cause two Qualified Domestic Relations Orders to be filed so that Neelima receives one half of his 401(k) benefits in his plans through SEI-Services and through Siemens Savings Plan. Neelima was allowed to keep all of the money in her 401(k) plan. The court ordered the parties to retain the household goods, furniture, furnishings and equipment currently in their possession.

**{¶ 58}** We note that the G.A.L. report provides that at the time the G.A.L. visited the parties' home, in May, 2013, "Madhav reminded the Guardian that the home was largely devoid of furnishings because the home was essentially sold, and the parties were relocating, when this case developed." The report provides that Madhav provided documentation regarding the donation of "significant household goods to the Society of St. Vincent de

Paul, together with a link picturing the home as it looked when it was put on the market back in April 2012."

{¶ 59} We cannot conclude that the trial court abused its discretion in dividing the marital assets of the parties. As noted above, Neelima did not attend the final hearing and rebut Madhav's evidence regarding the parties' assets, and we have no basis to conclude that the division thereof is inequitable. *See, e.g., Mankin v. Mankin*, 7th Dist. Monroe No. 07 MO 4, 2008-Ohio-6214, ¶ 15 (finding no error in the court's division of marital property, since "Frederick's argument is hindered greatly by the fact that he did not attend the divorce hearing. Thus, the only evidence in this case was presented by Julie. Generally, if a party fails to appear at the final divorce hearing, '[a]ny deficiency claimed by appellant is explained by appellant's failure to appear at his final divorce hearing.' *Huff v. Huff* (Dec. 14, 2000), 8th Dist. No. 77670, at *1.")

{¶ 60} We note that while in her brief Neelima asserts that she and Madhav also had accounts at "Fifth-Third Bank, Investments in ING Direct, [and] K-1 Systems," no evidence was presented at the final hearing regarding these accounts.

{¶ 61} Finally, regarding Neelima's student loan, Neelima obtained her law degree in 2006. "Although student loans have been considered marital debt, the debt may properly be allocated to the party who incurs the debt and receives the benefit. *Webb v. Webb* (Nov. 30, 1998), Butler App. No. CA97-09-167, unreported." *Thill v. Thill*, 2d Dist. Clark No. 2001-CA-23, 2001-Ohio-1490, 2001 WL 929995 at *4. We note that Neelima does not assert that any of her loan proceeds were used to support her family beyond her school expenses. The record supports a conclusion that Madhav has assisted Neelima in the past in

repaying her student loan debt, and as noted above, it is unclear why Neelima is unable to find work to enable her to repay her loan. In view of the facts of this case, we cannot conclude that it is inequitable for Neelima to be responsible for her student loan, and we find that an abuse of discretion is not demonstrated.

{¶ 62} For the foregoing reasons, Neelima's fourth assigned error is overruled, and the judgment of the trial court is affirmed.

. . . . . . . . . .

FROELICH, P.J. and FAIN, J., concur.

Copies mailed to:

Keith R. Kearney
Neelima Lakkapragada
Hon. Timothy D. Wood