[Cite as *Grimes v. Grimes*, 2014-Ohio-729.]

IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
GREENE   COUNTY

| | | |
|---|---|---|
| BEVERLY A. GRIMES | : | |
| | : | Appellate Case No. 2013-CA-047 |
| Plaintiff-Appellee/Cross-Appellant | : | |
| | : | Trial Court Case No. 2011-DR-174 |
| v. | : | |
| | : | (Civil Appeal from Common Pleas |
| RICHARD A. GRIMES | : | Court, Domestic Relations) |
| | : | |
| Defendant-Appellant/Cross-Appellee | : | |
| | : | |

· · · · · · · · · · ·

O P I N I O N

Rendered on the 28th day of February, 2014.

· · · · · · · · · · ·

CYNTHIA A. LENNON, Atty. Reg. #0019458, Post Office Box 68, Xenia, Ohio 45385
      Attorney for Plaintiff-Appellee/Cross-Appellant

MARK J. DONATELLI, Atty. Reg. #0019461, Donatelli Law LLC, 77 West Main Street, Xenia,
Ohio 45385
      Attorney for Defendant-Appellant/Cross-Appellee

· · · · · · · · · · · · ·

HALL, J.,

   **{¶ 1}**   Richard Grimes appeals from the trial court's August 20, 2013 final judgment

and divorce decree that, among other things, divided the parties' personal property and debts,

ordered Beverly Grimes to pay spousal support, awarded her all equity in the martial residence, and denied her request for retroactive temporary child support. Beverly Grimes has cross-appealed from the same judgment.

{¶ 2}     The record reflects that the parties were married in 1982. They separated in May 2011. Although they had two children during their marriage, one was emancipated prior to their separation. The other became emancipated after their separation but before the trial court's final judgment. At the time of the proceedings below, Beverly, who had a high-school education, earned $54,000 annually working for the Greene County Career Center. Richard held a bachelor's degree in computer programing and an MBA.[1] He worked for Montgomery County Children Services from approximately 1993 until 2001, when he voluntarily quit. Prior to quitting, he earned around $40,000 to $45,000 per year. Since then, he has earned nominal income through self employment involving hobbies. As a result, the parties relied on Beverly for financial support during the last decade or so of their marriage. At one point during the marriage, they purchased a home from Beverly's father for $50,000. This home was the marital residence at the time of their separation.

{¶ 3}     A magistrate held a March 12, 2012 hearing on all disputed issues related to the divorce action. Based on the testimony presented, the magistrate filed a decision and order granting Beverly a divorce on the grounds of gross neglect of duty. The magistrate  found that the marital residence was Beverly's separate property and awarded it to her. The magistrate also addressed the division of the parties' personal property, divided the martial debts, awarded Richard $450 per month in spousal support for eight years, and denied Beverly's request for

---

[1] For purposes of convenience and clarity, we will refer to the parties by their first names.

retroactive temporary child support during the pendency of the proceeding. (Doc. #31). Both parties filed objections.

{¶ 4}     On April 25, 2013, the trial court filed a short decision summarily overruling all objections. (Doc. #45). Both parties appealed. On July 10, 2013, this court dismissed the appeal for lack of a final, appealable order, noting that the trial court's decision failed to include a separate judgment or an order indicating the relief granted. Thereafter, the trial court filed a more detailed decision resolving the parties' objections to the magistrate's order. (Doc. #58). The trial court also filed a separate final judgment and decree of divorce. (Doc. #59). Therein, it disagreed with the magistrate with regard to the parties' residence. The trial court found that it was marital property, not Beverly's separate property. The trial court nevertheless found it equitable to award her all equity in the home. The trial court also awarded each party certain personal property. With regard to the remaining personal property, the trial court ordered the parties to divide it by alternating selection with Beverly going first. In addition, the trial court found that the debt on three credit cards was marital debt and found each party responsible for half of it. With regard to spousal support, the trial court agreed with the magistrate and ordered Beverly to pay $450 per month for eight years. The trial court retained jurisdiction over the amount and duration of spousal support. It also addressed other issues not relevant here.

{¶ 5}     Richard advances three assignments of error on appeal. In the first, he claims the trial court erred in valuing the marital residence and awarding Beverly all equity therein.  With regard to valuation, Richard challenges the trial court's reliance on an appraisal by Beverly's expert, who valued the home at $44,000. Richard asserts that the trial court should have relied on the $114,000 value established by his appraiser. With regard to the equity in the home, he asserts

that the trial court erred in treating a home-loan forgiveness as a gift to Beverly from her father. He further argues that the facts do not warrant awarding Beverly all of the equity.

{¶ 6} Upon review, we find Richard's arguments to be unpersuasive. The trial court expressly found Beverly's appraisal to be the most "reasonable and reliable." (Doc. #58 at 5). The record supports this conclusion. Beverly had the home appraised by Craig Bussey, a licensed and certified appraiser with thirty-five years of experience. Bussey identified a number of factors negatively affecting the value of the home, which was built in 1873. They included (1) a very old boiler system, (2) no heat upstairs, (3) only one bathroom, which was unheated, (4) "spongy" floors, (5) multiple layers of peeling wallpaper, (6) missing trim, (7) worn paint and flooring, (8) a marginally functional garage, (9) little landscaping, (10) no air conditioning, (11) no duct work, and (12) an oddly shaped, relatively small lot that offered little privacy. (Hearing Tr. at 16-19). The house also has no washing machine hookup, meaning that water must be hauled to and from the washing machine to use it. (*Id*. at 68).

{¶ 7} Although Bussey included foreclosures in his analysis of comparable sales, he explained that he did so because they were within the same area and "they were all old houses on small acreage sites that * * * basically were older and to varying degrees they also needed work on them[.]" (Id. at 22). He believed they were of similar "status, condition and functionality." (*Id*. at 16). Bussey criticized the appraisal obtained by Richard, noting that it relied on comparables with significant updates and remodeling that the subject home lacked. These items included, among other things, geothermal heat, a new furnace and air conditioning, a new well, a new septic system, a remodeled kitchen, antique woodwork, new windows, and a heat pump with a backup propane system. (*Id*. at 20-21).

{¶ 8} On appeal, Richard argues that Bussey (1) inappropriately used foreclosures as comparables, (2) failed to consider the value of a large pole barn adjacent to the home, and (3) established a value "completely inconsistent" with the tax-assessed value of $79,000. We find these arguments unpersuasive. Although Bussey did include foreclosures in his comparables, he gave a reasonable explanation for doing so. In addition, contrary to Richard's argument, Bussey did consider the value of the pole barn. He estimated that the pole barn added $5,000 in value to the property. (*Id.* at 28). This is more generous than the $4,000 in added value that Richard's own appraiser attributed to the pole barn. (*Id.* at 109). Finally, we note that Bussey's appraisal is no more inconsistent with Richard's claimed $79,000 tax-assessed value than the appraisal provided by Richard's own expert. Bussey valued the property $35,000 below the tax-assessed value, whereas Richard's appraiser valued the property $35,000 above the tax-assessed value. We note too that Richard and Beverly only paid $50,000 for the home. (*Id.* at 30). In any event, the trial court had discretion to chose which appraisal it found most reasonable and accurate. We see no abuse of that discretion.

{¶ 9} Richard also challenges the trial court's decision to award Beverly all equity in the home. In support of its decision, the trial court reasoned:

The Court finds that the real estate located at 4304 Cherry Grove Road is marital property subject to equitable division in this case, as it was granted to both parties by deed from Plaintiff's Father during the marriage. The Court finds that the value of such real estate is $44,000 and that the appraisal done by Craig Bussey is the more reasonable and reliable appraisal. The Court finds Mr. Grice, Father of Plaintiff, forgave $22,000 in debt associated with the property and that the same should be credited solely to Plaintiff as his daughter. The Court finds that

there is thus $22,000 of remaining equity, and that each party is entitled to one-half of such equity. However, the Court further finds that Defendant should not be entitled to share in the equity in the marital real estate due to the following factors: his failure to provide any financial contribution to marital obligations for the last ten years the parties lived together; his removal of $17,000.00 from the safe in the marital home when he left; his decision not to contribute any of his $11,000 inheritance to support the household; his failure to obtain regular employment since 2001; and his failure to use his educational degrees he received during the marriage to benefit the financial status of the marriage.

(Doc. #59 at 2).

{¶ 10} On appeal, Richard challenges the trial court's finding that the $22,000 debt forgiveness was a gift to Beverly from her father. This argument lacks merit. Grice testified that when the deed was placed in Richard's and Beverly's name in 2005 following a lengthy land contract, approximately $22,000 remained unpaid. (Hearing Tr. at 37). He testified that he forgave this amount as "a gift" to his daughter. (*Id.*). Beverly also testified that the $22,000 debt forgiveness was a gift to her from her father. (*Id.* at 65). The trial court had discretion to credit this testimony and, therefore, to find that the first $22,000 in home equity was Beverly's separate property. Grice's debt forgiveness was equivalent to him handing her $22,000 cash as a gift and her then using those separate funds to pay off the land contract. *See* R.C. 3105.171(A)(6)(a)(vii) (recognizing that separate property includes a gift made to one of the parties after the date of marriage).

{¶ 11} In light of the trial court's $44,000 valuation of the house, $22,000 in equity

remained after subtracting Grice's debt forgiveness. The trial court recognized that Richard ordinarily would be entitled to $11,000 of that amount. On appeal, he challenges the trial court's refusal to award it to him. Specifically, he argues that the evidence does not support the findings the trial court made when it awarded Beverly the equity. Richard attributes his lack of employment to depression. He claims he has had trouble finding work since he "lost his job" in 2001. He notes that he worked in positions consistent with his education prior to then. He also stresses that the inheritance the trial court referenced was his separate property. In addition, he cites his testimony that $11,000 of the $17,000 he removed from a safe was money from his inheritance.

{¶ 12}  Upon review, we see no abuse of discretion in the trial court's decision to award Beverly all equity in the marital home. The record does contain evidence that Richard suffers from depression, that he worked full-time until 2001, and that $11,000 of the $17,000 he removed from a safe was his inheritance. On the other hand,  the record reflects that Richard did not "lose" his job in 2001. He quit voluntarily after getting written up at work. (Hearing Tr. at 50, 119). Thereafter, he engaged in substitute teaching for a year and a half and sold some stained glass and a few paintings. The record reflects that he did little else to earn income, relying instead on Beverly for support. (*Id.* at 50-54, 136). The record does not suggest that Richard's depression prevented him from obtaining any employment. He claimed below that he simply could not find a job. He explained that he had been "trying to concentrate on finding * * * a computer job or a job that goes along with [his] degrees." (*Id.* at 57). He also admitted telling Beverly, however, that he would rather starve than work at a job he did not like. (*Id.* at 135).

{¶ 13}  In short, the record supports a finding that Richard unjustifiably failed to work

and that his refusal to work placed an unfair burden on Beverly to be responsible for the parties' living expenses. We note too that even if Richard was entitled to remove $11,000 from the safe as his separate inheritance, the other $6,000 he took was marital property. Beverly presumably would have been entitled to $3,000 of that money. Based on the evidence before us, the trial court had discretion to find that an equal division of the remaining $22,000 in home equity would be inequitable and to award that money to Beverly. *See* R.C. 3105.171(C)(1) (recognizing that a trial court need not divide marital property equally when an equal division would be inequitable). The first assignment of error is overruled.

{¶ 14} In his second assignment of error, Richard contends the trial court erred in requiring him to pay half of the debt on three credit cards. This argument concerns three U.S. Bank credit cards. The trial court found that the balance owed on them was marital debt. It ordered Richard to pay $11,873, which was half of the debt.

{¶ 15} In challenging the trial court's decision, Richard contends the credit cards were in Beverly's name, he did not have access to them, and Beverly incurred the debt without his knowledge. Therefore, he argues that he should not be obligated to pay half of the debt. We disagree. Regardless of whether Richard used the cards or knew of the debt, Beverly testified that she used the cards during the marriage to pay household bills and other living expenses. In overruling Richard's objection to the magistrate's ruling, the trial court reasoned:

> The court finds from the evidence and testimony presented and considered
> by the Magistrate, the Magistrate correctly found that the credit cards were used
> for marital debts  and obligations from which the Defendant benefitted
> throughout the marriage. The testimony was clear that the defendant contributed

very little, if anything, to the household financial obligations and no testimony was presented by the Defendant that he ever questioned the source of the funds which were used to support him and buy him expensive guitars and other items during the marriage. To now allow the Defendant to escape any responsibility for the credit card debts that were used to support him would be unfair and inequitable. * * *.

(Doc. #58 at 6).

{¶ 16}  Upon review, we see no abuse of discretion in requiring Richard to pay half of the marital credit-card debt. His second assignment of error is overruled.

{¶ 17}  In his third assignment of error, Richard asserts that the trial court erred in dividing the parties' personal property. He complains about the use of an alternate-selection method to divide the property and the trial court's decision to allow Beverly to choose first.

{¶ 18}  The record reflects that the trial court awarded Richard all personal property listed in Defendant's Exhibit C. The trial court awarded Beverly her personal property listed in Plaintiff's Exhibit 6. The trial court then ordered all other items listed in Defendant's Exhibit E to be divided by alternate selection with Beverly picking first. Exhibit E contains approximately 154 items or sets of items. The parties presented no testimony about most of them or their value. Therefore, the trial court did not err in using the method it did to divide the items. It is not always reasonable, or even possible, for a trial court to place a value on every piece of personal property. *Hall v. Hall*, 3d Dist. Hardin No. 6-10-01, 2010-Ohio-4818, ¶ 44; *see also Cole v. Cole*, 4th Dist. Jackson No. 00CA03, 2000 WL 33256638, *3 (Dec. 15, 2000) ("There is no reason to find, and appellant cites no authority, that the alternative selection method is inequitable per se. * * * This

court notes that because the value of any item is often a highly subjective matter, alternative selection may be the most equitable arrangement since each party can acquire that property most valued without reference to fair market value.").

{¶ 19} Although Richard complains that some items are worth more than others, the trial court had no evidence from which to value most of them. Given the lack of evidence regarding valuation and the number of items, we see no abuse of discretion in the trial court's method of disposition or its decision to give Beverly first choice. During the hearing, the magistrate had indicated that a coin flip would be used to determine which party picked first. (Hearing Tr. at 145). We presume, therefore, that a coin flip occurred. In any event, someone had to choose first, and allowing Beverly to do so was not an abuse of discretion where the selections were to be made from a list Richard created.

{¶ 20} Finally, Richard makes a reference to Defendant's Exhibit E not being attached to the trial court's final judgment and divorce decree. We note that this exhibit was admitted into evidence during the hearing and is part of the record. Richard infers from the non-attachment of Exhibit E "that the [trial court] has awarded to Appellee all the marital property contained in Exhibit 6, which is not equitable to Appellant." (Appellant's brief at 7). The trial court's failure to attach a copy of the exhibit to its judgment is immaterial. All three of the personal-property exhibits were admitted during the hearing and are before us.

{¶ 21} We do agree with Richard, however, that the trial court's judgment entry erroneously purports to award Beverly all of the items listed in Plaintiff's Exhibit 6. When ruling on objections to the magistrate's decision, the trial court made clear that Beverly actually was to receive the items listed in Exhibit 6 that "were marked as [her] separate property[.]" (Doc.

#58 at 4). In its judgment entry, however, the trial court purported to award her all items listed in Exhibit 6. (Doc. #59 at 2). On appeal, Beverly concedes that she is not entitled to all of the property identified in Exhibit 6. She characterizes the trial court's statement to the contrary as a clerical error. (Appellee's brief at 6). In light of this concession, we will sustain Richard's third assignment of error insofar as he challenges the portion of the judgment entry awarding Beverly all of the items listed in Exhibit 6.[2]

{¶ 22}  In her cross appeal, Beverly advances four assignments of error. In the first, she contends the trial court erred in awarding Richard spousal support of $450 per month for eight years. She argues that he should receive no support or, alternatively, that he should receive less support for a shorter duration.

{¶ 23}  The magistrate provided the following reasoning for awarding Richard spousal support:

> After considering all of the factors contained in Ohio Revised Code 3105.18(C)(1)(a)-(n), the Magistrate determines that it is fair, just and equitable that Plaintiff be ORDERED to pay spousal support. The Court finds that given the earning abilities, assets and liabilities awarded to each party, the length of the marriage as determined by the date of marriage until the time of separation was 29 years. * * * The parties lived a life style which was modest, most are in the form of personal property issues [sic]. Husband has a greater earning ability than his present income indicates. Husband obtained a Master's Degree during the term of

---

[2] As noted above, the trial court plainly intended to award Richard all personal property listed in Exhibit C, to award Beverly her personal property identified in Exhibit 6, and then to order all other items listed in Defendant's Exhibit E to be divided by alternate selection.

the marriage while the wife worked and took care of the children and household. During the first half of the marriage, Husband was the larger wage earner. However, during the last ten years of the marriage, Wife was the sole wage earner. Husband's mental health directly affected his ability to work, especially during the very end of the marriage. Both parties have separate property that can supplement income. Both have relatively equal retirement accounts after the equitable division agreed to or ordered herein. Further, Husband has additional earning ability through his hobbies of painting and stained glass work. Both are of an age where they are still capable of working, although Wife has enough accumulated years to retire under her public pension system. Wife has only a high school diploma and is working at the height of her earning capacity. Husband is not. Husband has far more skills and experience than he has voluntarily utilized over the last decade. While Husband's re-entry into the work force has been difficult, given his work history, degrees and experience, it is not unreasonable to put his earning ability in the range of $30,000-$40,000. The Magistrate concludes that it is reasonable that spousal support be awarded to Husband in the amount of $450.00 per month for a period of 8 years. This accounts for approximately 35% of the net difference in income potential between the parties for a term of approximately 1/3 of the duration of the marriage.

(Doc. #31 at 4-5).

**{¶ 24}** Beverly objected to the magistrate's support award. She argued that she earns more than Richard only because he is unwilling to work. She asserted that he has better

qualifications, a better education, a better earning capacity, and the ability to work. She claimed he needed an incentive to find a job, not time to do so. She also maintained that Richard had no expenses because he was residing with his mother. (Doc. #34 at 2-5). She essentially repeated these assertions in a supplemental objection. (Doc. #42 at 7-9). She also claimed that he had started making some money after the final hearing. (*Id*.).

{¶ 25}   The trial court overruled Beverly's objection to spousal support. It noted that the magistrate had considered the applicable statutory support factors, and it found that awarding Richard support of $450 per month for eight years was "appropriate and supported by the law and facts in this case."   (Doc. #58 at 1-2). The trial court also rejected "any reference to [R]ichard's earnings after the final hearing," finding that any such earnings might be grounds for later modifying the support award. (*Id*.). In its final judgment and decree of divorce, the trial court did retain continuing jurisdiction over the amount and duration of spousal support. (Doc. #59 at 2-3).

{¶ 26}   We begin our analysis by recognizing that a trial court enjoys broad discretion with regard to spousal support awards, and its decision will not be disturbed absent an abuse of discretion. *Lakkapragada v. Lakkapragada*, 2d Dist. Montgomery No. 25883, 2014-Ohio-331, ¶ 46. Spousal support awards are governed by R.C. 3105.18(C)(1), which identifies the following factors for a trial court to consider:

(a) The income of the parties, from all sources, including, but not limited to, income derived from property divided, disbursed, or distributed under section 3105.171 of the Revised Code;

(b) The relative earning abilities of the parties;

(c) The ages and the physical, mental, and emotional conditions of the

parties;

(d) The retirement benefits of the parties;

(e) The duration of the marriage;

(f) The extent to which it would be inappropriate for a party, because that party will be custodian of a minor child of the marriage, to seek employment outside the home;

(g) The standard of living of the parties established during the marriage;

(h) The relative extent of education of the parties;

(i) The relative assets and liabilities of the parties, including but not limited to any court-ordered payments by the parties;

(j) The contribution of each party to the education, training, or earning ability of the other party, including, but not limited to, any party's contribution to the acquisition of a professional degree of the other party;

(k) The time and expense necessary for the spouse who is seeking spousal support to acquire education, training, or job experience so that the spouse will be qualified to obtain appropriate employment, provided the education, training, or job experience, and employment is, in fact, sought;

(l) The tax consequences, for each party, of an award of

spousal support;

(m) The lost income production capacity of either party that resulted from that party's marital responsibilities;

(n) Any other factor that the court expressly finds to be relevant and

equitable.

{¶ 27}   Based on the record before us, we cannot say the trial court abused its discretion in awarding Richard spousal support. We do not dispute Beverly's claim that he has a better earning capacity than her—at least on paper—due to his education and prior work experience. Nevertheless, the trial court reasonably could have considered the fact that Richard, who was fifty-four years old at the time of the hearing, did little work outside the home for roughly the last ten years of a nearly thirty-year marriage. After quitting his job, he essentially became a stay-at-home dad. Although Beverly may not have agreed with this decision, she acquiesced in it for a decade. The end result was that Richard became dependent on her income.

{¶ 28}   The record also supports a finding that, as a result of Richard's lengthy absence from the workforce, he now is having trouble finding employment. During the final hearing, he identified an exhibit listing nearly ninety jobs for which he had applied over a four-month period. (*Id*. at 121). The jobs ranged from entry-level retail positions to managerial and professional positions. (*Id.* at Defendant's Ex. G). Richard testified that he had received four interviews and was waiting to hear from one potential employer. (*Id*. at 121).

{¶ 29}   In its decision, the magistrate found that Richard is employable. Therefore, the magistrate imputed income to him and estimated "his earning ability in the range of $30,000-$40,000." Based on the record before us, this estimate is not unreasonable. During the hearing, Beverly testified that her income is $54,000. In recognition of the income disparity, the magistrate found it reasonable to award Richard spousal support of $450 per month, or $5,400 per year, for eight years. The magistrate noted that such an award "accounts for approximately 35% of the net difference in income potential between the parties for a term of approximately 1/3

of the duration of the marriage." The trial court found such an award "appropriate," and its decision is not unreasonable, arbitrary, or unconscionable. In reaching this conclusion, we recognize that the trial court has retained jurisdiction over the amount and duration of spousal support. Beverly's first assignment of error is overruled.

{¶ 30} In her second assignment of error, Beverly claims the trial court erred in failing to award her retroactive temporary child support. She stresses that she supported the parties' daughter from May 2011, when she and Richard separated, until May 2012, when the child became emancipated. Absent extenuating circumstances, Beverly argues that she is entitled to child support for that one-year period.

{¶ 31} The magistrate rejected Beverly's argument, reasoning that "any child support due to the wife would have been offset by an order of temporary spousal support from the Wife to the Husband." (Doc. #31 at 5). The magistrate then concluded "that no exchange of temporary support for either child support or spousal support is appropriate." (*Id*.). Beverly objected to this determination, and the trial court overruled the objection. It agreed with the magistrate that any award of temporary child support to Beverly could have been offset by a corresponding award of temporary spousal support to Richard. Under these circumstances, the trial court found it reasonable not to award temporary child support or temporary spousal support. (Doc. #58 at 2).

{¶ 32} On appeal, Beverly does not specifically address the trial court's determination that any award of temporary child support to her could have been offset by an award of temporary spousal support to Richard. Given our determination above that Richard is entitled to spousal support, we cannot say the trial court abused its discretion in denying Beverly's request for the reason it gave. Accordingly, her second assignment of error is overruled.

**{¶ 33}** In her third assignment of error, Beverly argues that the trial court erred in failing to divide as marital debt the balance owed on a fourth credit card. Her argument on this issue is as follows:

> The court held that there was insufficient evidence to consider the revolving credit card to FIA in the amount of $1825.93 as a marital debt. This credit card was listed in the appellant's affidavit. In testimony at trial, both parties acknowledged it was a marital debt and it should be divided equally. T.p. 71.
>
> The trial court erred in not including a marital debt when both parties testified [and] acknowledged that it was a marital debt in sworn trial testimony.

(Cross-appellant's brief at 13).

**{¶ 34}** In overruling an objection by Beverly concerning the foregoing credit card, the trial court reasoned:

> [Beverly] refers the Court to page 71 of the transcript for the information surrounding this debt. A review of page 71 indicates that the Plaintiff was asked "And is there a joint credit card debt?" To which her response was "Yes." When asked how much the Plaintiff responded "Currently it is about $1300.00." This is the extent of the testimony about this alleged joint credit card. No exhibit was presented and a review of the affidavit of the Defendant indicates one credit card is listed as "FIA Credit Card" with the balance at $1427.00. The Plaintiff in her memorandum as part of her objection lists a third different amount at $1825.93. The Court finds the Plaintiff has failed to present the necessary evidence to show there was a joint credit card account and to show a balance with certainty as to

allow the Magistrate or the undersigned to include a decision regarding this issue.

(Doc. #58 at 3).

{¶ 35}    Upon review, we conclude that the trial court abused its discretion in failing to divide the debt on the FIA credit card. After testifying about the three credit cards that we discussed above, Beverly mentioned a "joint credit card debt" with a balance of "about $1,300." (Hearing Tr. at 71). She then testified that the total debt on all four credit cards was "[a]bout $25,000." Counsel proceeded to ask how she "incurred that debt[.]" (*Id.*). Beverly responded that she incurred it to pay household expenses after Richard quit working. (*Id.*). In addition, Richard's affidavit of financial disclosure listed an "FIA Credit Card" with a balance of $1,427 as a household expense. (Doc. #16 at 4). Beverly's affidavit of financial disclosure showed the same balance due on this card. (Doc. #3 at 4). On cross examination below, Beverly agreed with opposing counsel that Richard had charged $1,400 on this credit card shortly before the parties' separation. (Hearing Tr. at 77). She also admitted that Richard gave her $1,000 in return. (*Id.*). Beverly explained that she used $500 of the money to pay toward the balance and used the other $500 to pay a vet bill for their dog. (*Id.*).

{¶ 36}    In our view, the evidence before the trial court established, at a minimum, that the FIA credit card had a balance of $1,427 and that it was a marital debt. The parties' identical affidavits of financial disclosure established the $1,427 balance, and Beverly's uncontroverted testimony demonstrated that she incurred the debt  to pay household bills and other living expenses. We see no reason to treat the admitted $1,427 balance on the FIA credit card any differently than the debt owed on the other three credit cards. Therefore, we will sustain Beverly's third assignment of error in part. We disagree with her argument that the trial court

should have found a balance of $1,825.93 owed on the card. She cites no evidence to support that figure. The trial court did err, however, in holding that Beverly had "failed to present the necessary evidence to show there was a joint credit card account and to show a balance with certainty[.]" The record supports the $1,427 balance referenced in both affidavits of financial disclosure, and the trial court should have required Richard to pay half of that marital debt.

{¶ 37}   In her fourth assignment of error, Beverly challenges the trial court's finding that the parties' residence was marital property. Although Richard and Beverly both are on the deed, she claims her father sold them the home intending for it to belong to her. She contends he placed both names on the deed only because he believed it had to be done that way.

{¶ 38}   The trial court rejected Beverly's argument, reasoning:

> * * * The testimony was uncontroverted that the deed from [Beverly's] father and mother was transferred to both the Plaintiff and Defendant herein and was the end result of a land contract, entered into between the Plaintiff's parents and both parties in this case. Both of those documents were created and signed during the term of the marriage. The testimony of Robert Grice indicat[ing] he did not know he could put the deed in just his daughter's name is not enough to overcome the statutory presumption that the property was marital. All Mr. Grice had to do at any point was ask his own attorney Lester Ferguson, who prepared the deed, and he would have been informed that such a transfer to just his daughter was clearly available to him. The Plaintiff also testified that she instructed her father to have the property put in both [of] their names. (See transcript page 82).

(Doc. #58 at 4).

{¶ 39}   We see no abuse of discretion in the trial court's ruling. Although Beverly claims her father wanted the home to belong to her alone, it was not a gift. Richard and Beverly purchased the home from her parents on a land contract. The trial court noted that Richard and Beverly both were parties to the contract and were named in the deed. Given Richard's status as a party to the land contract, we fail to see how Beverly's father could have dictated the terms of the deed even if he had wanted her to own the home separately. It appears that Robert Grice deeded the property to Richard and Beverly because they both purchased it from him on a land contract. Beverly also testified that she wanted the property deeded to her and Richard because they were married. (Hearing Tr. at 82). In short, the record supports the trial court's finding that the residence was marital property. Beverly's fourth assignment of error is overruled.

{¶ 40}   Based on the reasoning set forth above, the trial court's judgment is affirmed in part and reversed in part, and the cause is remanded for further proceedings. Specifically, the judgment is affirmed in all respects except for (1) the trial court's misstatement in its judgment entry awarding Beverly all personal property listed in Plaintiff's Exhibit 6 and (2) the trial court's failure to divide a $1,427 balance on the parties' joint FIA credit card. As explained in our analysis of Richard's third assignment of error, Beverly is entitled to those items in Exhibit 6 that are marked as her separate property. As explained in our analysis of Beverly's third assignment of error, on remand the trial court shall order Richard to pay half of the $1,427 debt on the FIA credit card.

. . . . . . . . . . . .

FROELICH, P.J., and WELBAUM, J., concur.

Copies mailed to:

Cynthia A. Lennon
Mark J. Donatelli
Hon. Steven L. Hurley