[Cite as *Momotaz v. Sattar*, 2022-Ohio-2676.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

HASINA MOMOTAZ,                          :

    Plaintiff-Appellee,              :

                                 No. 111034

    v.                                :

ABDUS SATTAR,                            :

    Defendant-Appellant.             :

---

### JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** August 4, 2022

---

Civil Appeal from the Cuyahoga County Court of Common Pleas
Domestic Relations Division
Case No. DR-19-377548

---

### *Appearances:*

Sharon Comet-Epstein; Nicola, Gudbranson & Cooper,
LLC, and John D. Sayre, *for appellee.*

Michael Shaut Law Office and Michael Shaut, *for
appellant.*

SEAN C. GALLAGHER, A.J.:

{¶ 1} Defendant-appellant Abdus Sattar ("husband") appeals the trial court's April 29, 2021 summary judgment decision, the July 15, 2021 denial of his Civ.R. 60(B) motion, and the October 29, 2021 judgment entry of divorce. Husband

challenges the trial court's ruling on the validity of his marriage with plaintiff-appellee Hasina Momotaz ("wife") and the trial court's subject-matter jurisdiction over the parties' divorce. He also challenges the property division, spousal-support award, and attorney-fee award of the judgment entry of divorce. Upon review, we affirm the judgment of the trial court.

## I.      Factual and Procedural History

{¶ 2}    On August 22, 2005, the parties participated in a telephonic marriage ceremony, which was conducted over a speaker phone. At the time of the marriage ceremony, husband resided in the United States, wife resided in Bangladesh, and both were citizens of Bangladesh. Husband traveled from Pennsylvania to New York and was with friends and relatives during the ceremony. Wife was in Bangladesh with friends and family members and husband's father. Also present in Bangladesh was Mawlana Kofiul Ahmed, who solemnized the marriage and identified himself as an assistant marriage registrar, and Abul Hashem Majumdar, a community leader who appeared to sign the marriage register on husband's behalf as his "pleader." Pictures of the marriage ceremony were provided.[1] Witness statements indicated that the solemnization was according to Sharia law.

{¶ 3}    The legal marriage contract that was entered into between the parties is referred to as a "Nikah Nama." Husband stated in his deposition that there were

---

[1] One photograph depicts Majumdar signing the marriage register during the marriage ceremony. Wife alleges that Majumdar was invited by husband's father to be the pleader. Although there are conflicting statements from witnesses, several witnesses stated that during the ceremony husband was asked for the appointment of Majumdar as his pleader and husband consented.

no issues with the ceremony or the solemnization of the marriage before witnesses according to Muslim law, and he believed he was lawfully married according to Bangladesh law.

**{¶ 4}** Following the marriage ceremony, wife continued to reside in Bangladesh until 2007, when husband traveled to Bangladesh. The marriage was consummated at that time. After a temporary stay in Canada, in August 2007, the couple arrived together in the United States, and they resided together in Pennsylvania. One child was born as issue of the marriage in February 2009. In October 2009, the family moved to Cleveland. Throughout their marriage, husband and wife presented themselves as a married couple. They lived together for 12 years, raised their child together, filed joint income tax returns, and wife received tuition benefits at Case Western Reserve University because husband was a faculty member.

**{¶ 5}** In 2019, the parties permanently separated. Husband went to Bangladesh to obtain a divorce. Husband filed an affidavit stating he "got married to [wife] * * * as per the laws of Bangladesh and conditions of Sharia law." Husband also filed a civil suit in Bangladesh for a declaration and cancellation of the marriage registration.

**{¶ 6}** On July 15, 2019, wife filed her complaint for divorce in the Cuyahoga County Court of Common Pleas Domestic Relations Division. In his answer to wife's complaint, husband raised affirmative defenses that the parties' marriage was

invalid under Bangladesh law and that the court lacked subject-matter jurisdiction over the complaint.

{¶ 7} Thereafter, husband filed a brief on the alleged invalidity of his marriage to wife. Wife filed a brief in opposition in which she gave notice of her intent to rely on the law of a foreign country, Bangladesh, with respect to the validity of the marriage. Husband agreed that the law of Bangladesh governed whether the parties were legally married.

{¶ 8} Husband argued that he "never signed the marriage register/contract of marriage," that the marriage was solemnized by Ahmed, who is not a government-appointed marriage registrar, and that husband never authorized or appointed Majumdar to sign the marriage register on his behalf. Husband stated that after initiating divorce proceedings in Bangladesh, he learned of the irregularity of the pleader's signature on the marriage documents and the utilization of an "Assistant Muslim Marriage Registrar" to solemnize the ceremony.

{¶ 9} Husband's position was that "the marriage was unlawfully registered in violation of * * * [the Muslim Marriages & Divorces (Registration) Act, 1974 § 5, and Muslim Marriages [and] Divorces (Registration) Rules 2009]." Husband claimed that the marriage registration was prima facie invalid under Bangladesh law and that wife's complaint should be dismissed for lack of subject-matter jurisdiction. Among other exhibits, husband provided an expert opinion from a Bangladesh

barrister[2] who opined "on the basis of Bangladesh laws after perusing information & documents provided" that "the registration of the [subject] marriage is not valid and [is] unmaintainable in law."

{¶ 10} Wife argued that "[u]nder Bangladesh law, an invalid registration would not render an otherwise valid marriage invalid." Wife cited Bangladesh cases recognizing a marriage between Muslims is purely a civil contract and that "'[n]either writing nor any religious ceremony is essential'" to a valid marriage under Bangladesh law. *Hossain v. Begum*, 4 BLC 521, 522-523 (1999), quoting Mulla's Mohammedan Law, Section 252. In *Hossain v. Begum*, the court indicated that "[n]on-registration of the marriage in question puts the opposite party at some disadvantage and at the same time strictly requires her to prove the factum of marriage." *Id.* at 522. As stated in *Chan Mia v. Rupnahar*, 51 DLR 293, 294 (1999):

> 16. [Under Mohammedan Law,] [m]arriage is legally contracted by declaration made by one contracting party being followed by a corresponding acceptance from the other.

> 17. If the marriage is otherwise valid, absence of written kabinnama or its registration does not invalidate the marriage. The Muslim Marriages and Divorces (Registration) Act 1974 has provided that "marriage solemnized under Muslim Law shall be registered in accordance with the provisions of this Act." But nowhere in the said Act it has been provided that non-registration would render the marriage invalid.

*See also Begum v. Hossain*, 40 CLC (AD) [5222], at ¶ 12 (2011) (recognizing "[t]he Mohammedan Law does not insist upon any particular form in which the

---

[2] The legal opinion provided by husband was from Barrister Shajib Mahmood Alam, Advocate, Supreme Court of Bangladesh.

contractual performance should be effected" or that the union be evidenced by any writing, and that "even in the absence of formal proof of a valid marriage, a marriage can be presumed by evidence of conduct and reputation * * *.")

{¶ 11} As argued by wife, "[t]here is no rule or law in Bangladesh that stipulates that a marriage would be rendered invalid if it were not properly registered." Wife provided expert legal opinions from Bangladesh barristers[3] that construed Bangladesh law and reached the conclusion that the marriage between husband and wife is valid.

{¶ 12} Wife filed a motion for summary judgment, and husband filed a cross-motion for summary judgment on the issue of the validity of the marriage and the court's jurisdiction. Wife claimed the parties had a valid marriage. Husband claimed no lawful marriage existed and that the court lacked subject-matter jurisdiction. Both parties filed numerous exhibits in support of their respective motions.

{¶ 13} On April 29, 2021, the trial court granted wife's motion and denied husband's motion. The trial court determined that "[t]he parties' marriage * * * is governed by Muslim Law also known as 'Sharia Law' or 'Mohammedan Law[,]'" that "the validity of the registration document is not an element to a valid Muslim marriage in Bangladesh and an invalid registration does not render the marriage

---

[3] Wife provided legal opinions from Omar H. Khan, Barrister-at-Law, Advocate, Supreme Court of Bangladesh; and Mahmud & Bhuiyan Barristers & Associates, Taisir Mahmud and Hasibul Islam Bhuiyan, Barristers-at-Law, Advocates, Supreme Court of Bangladesh.

invalid," and that the elements for a valid Muslim marriage were met. Upon the evidence presented, the trial court concluded as follows:

> [T]he Court finds that there are no issues of material fact and the parties' marriage in Bangladesh was valid. [Wife] demonstrated that: (1) the parties' admitted telephone marriage on August 22, 2005 met the essentials of a valid Mohammedan and Bangladeshi marriage and [2] registration of the marriage is not an essential element in order to establish the validity of a marriage. Accordingly, [Wife] is entitled to judgment as a matter of law and the Court retains jurisdiction over the parties' divorce.

{¶ 14} Following the summary-judgment ruling, husband filed a Civ.R. 60(B) motion for relief from judgment that was denied by the trial court on July 15, 2021. The case proceeded to trial.

{¶ 15} On October 29, 2021, the trial court issued a judgment entry of divorce, which included a division of property, an award of spousal support to wife, an award of attorney fees to wife, and other provisions. The trial court adopted and incorporated the parties' agreed shared parenting plan, and the court ordered father to pay child support.

{¶ 16} Husband timely filed this appeal.

**II.    Law and Analysis**

{¶ 17} Husband raises nine assignments of error, which can be grouped together into those challenging the trial court's summary-judgment ruling on the validity of the marriage and those challenging the spousal-support award, property division, and attorney fee award in the judgment entry of divorce.

### A. Validity of Marriage

{¶ 18} Assignments of error Nos. 1 through 5 challenge the trial court's summary-judgment ruling that determined the court had subject-matter jurisdiction over the divorce complaint. Husband specifically challenges the court's determination that the parties' marriage was valid.

{¶ 19} Appellate review of summary judgment is de novo and is governed by the standard set forth in Civ.R. 56. *See State ex rel. Awms Water Solutions v. Mertz*, 162 Ohio St.3d 400, 2020-Ohio-5482, 165 N.E.3d 1167, ¶ 23. "Under Civ.R. 56(C), summary judgment is appropriate when (1) there is no genuine issue of material fact, (2) the moving party is entitled to judgment as a matter of law, and (3) it appears after construing the evidence most strongly in the nonmoving party's favor that reasonable minds can come to but one conclusion." *Mertz* at ¶ 23.

{¶ 20} "A court lacks subject-matter jurisdiction over a divorce proceeding if the marriage between the parties was invalid." *Tatsing v. Njume-Tatsing*, 10th Dist. Franklin No. 16AP-827, 2017-Ohio-8460, ¶ 8, citing *Hussain v. Hussain*, 12th Dist. Butler No. CA2015-07-127, 2016-Ohio-3214, ¶ 12. "Generally, the validity of a marriage is determined by the *lex loci contractus*; if the marriage is valid where solemnized, it is valid elsewhere; if it is invalid there, it is invalid everywhere." (Emphasis sic.) *Mazzolini v. Mazzolini*, 168 Ohio St. 357, 155 N.E.2d 206 (1958), paragraph one of the syllabus; *see also Verma v. Verma*, 179 Ohio App.3d 637, 2008-Ohio-6244, 903 N.E.2d 343, ¶ 14 (2d Dist.), citing *Mazzolini* at paragraph one

of the syllabus; 45 Ohio Jurisprudence 3d, Family Law, Section 11 (Validity of foreign and sister state marriages).

{¶ 21} Civ.R. 44.1(B) applies to the determination of foreign law and provides as follows:

> **(B) Determination of foreign law.** A party who intends to rely on the law of a foreign country shall give notice in his pleadings or other reasonable written notice. The court in determining the law of a foreign country may consider any relevant material or source, including testimony, whether or not submitted by a party. The court's determination shall be treated as a ruling on a question of law and shall be made by the court and not the jury.

The Staff Note to Civ.R. 44.1(B) indicates that the rule requires a party to give advance notice of reliance upon the law of a foreign country, which is to be determined by the court and may often need translation and interpretation by an expert to aid the court in determining the applicability of the particular law. There is no dispute that notice of reliance on foreign law was provided in this case.

{¶ 22} "'Ohio courts may determine the law of a foreign country, which determination is made as a matter of law.'" *Hussain* at ¶ 19, quoting *EnQuip Technologies Group v. Tycon Technoglass*, 2012-Ohio-6181, 986 N.E.2d 469, ¶ 35 (2d Dist.). A court may give an expert's opinion on application of foreign law whatever weight it deems appropriate. *Id.* at ¶ 17-18.

{¶ 23} Husband claims that the trial court erred by concluding the marriage was valid despite the lack of a validly executed contract and an invalid registration under Bangladesh law. He argues that the marriage registrar did not perform the ceremony, witness the signatures, or examine the signors; and that husband never

signed the marriage register and did not appoint a pleader to sign on his behalf; and husband raises other challenges to the validity of the Nikah Nama.

{¶ 24} The trial court determined that the parties' marriage was valid under Bangladesh law. More specifically, the court found that the parties agreed the marriage met the essentials of a valid Mohammedan and Bangladeshi marriage and that the alleged invalidity of the registration does not render the marriage invalid. Upon our review of the record, we agree.

{¶ 25} Husband refers to the Muslim Marriages and Divorces (Registration) Act, 1974, which "applies to all Muslim citizens of Bangladesh wherever they may be" and requires "every marriage solemnized under Muslim law shall be registered in accordance with the provisions of this Act." However, wife cites to case law finding that "nowhere in the said Act [is it] provided that non-registration would render the marriage invalid." *Chan Mia*, 51 DLR at 294, ¶ 17. Rather, "[Under Mohammedan Law,] [m]arriage is legally contracted by declaration made by one contracting party being followed by a corresponding acceptance from the other" and "[i]f the marriage is otherwise valid, absence of written kabinnama or its registration does not invalidate the marriage." *Id*. at 294, ¶ 16-17. In *Begum v. Hossain*, 40 CLC (AD) [5222], the court recognized that "[m]arriage under the Mohammedan Law is a civil contract requiring no ceremony or special formality" and that "[t]here is no dispute that the Mohammedan marriage among muslims is not sacrament but purely civil contract." *Id*. at ¶ 8, 10. Upon reviewing various authorities on Mohammedan Law and considering the principles of Mulla's Mohammedan Law,

Sections 252, 254, and 268, the court determined "[t]he Mohammedan Law does not insist upon any particular form in which the contractual performance should be effected," a writing is not required for there to be a valid marriage, and "[a] marriage may also be proved presumptively by general conduct of the parties." *Id*. at ¶ 10-12, 37-39. Further, it was explained that an irregular marriage may arise from accidental circumstances and is not unlawful in itself. *Id*. at ¶ 16-17.

{¶ 26} Thus, as explained in the expert legal opinion of Barrister Khan, which was submitted by wife, "[n]on-registration of the marriage may cause doubt on the solemnization of the marriage itself, but does not make [the marriage] invalid." Likewise, the expert legal opinion of Mahmud & Bhuiyan Barristers & Advocates indicates "the law on Muslim marriages in Bangladesh is very clear. Marriage and its registration are two completely separate things. The invalidity of registration does not invalidate the marriage. Based on the documents we have before us it is our conclusive opinion that the marriage [herein] is valid." We find the expert legal opinions submitted by wife are convincing.

{¶ 27} We are not persuaded otherwise by the authority, expert legal opinion, and exhibits presented by husband. For example, *Begum v. Sarkar*, 50 DLR 181 (1998), was a suit instituted by a plaintiff for restitution of conjugal rights and for a permanent injunction restraining the defendant from marrying another man with whom she had six children. *Id*. at ¶ 2, 9. The defendant denied that she was married to the plaintiff and claimed the Kabinnama he submitted was forged. *Id*. at ¶ 5. After the trial court rendered a decision finding the plaintiff failed to prove

the marriage and the Kabinnama, the defendant got married to the father of her children, and the plaintiff also got married. *Id.* at ¶ 9. Nevertheless, the plaintiff appealed, and the judgment was reversed by the appellate court upon a misreading of the evidence. *Id.* at ¶ 7-8. The High Court Division set aside the appellate court's decision, recognizing that the plaintiff had failed to prove the Kabinnama and found "[i]n such circumstances the marriage was not proved" and "no amount of oral evidence will cure the deficiency * * * when the plaintiff failed to prove the Kabinnama according to law." *Id.* at ¶ 15, 24. The court also recognized that "women shall have equal rights with men" and the fundamental rights under the Bangladesh Constitution. *Id.* at ¶ 21. The *Sarkar* case was decided on the facts and circumstances presented and does not, as father suggests, require a signed Nikah Nama or valid registration as an essential for proving a valid marriage in this matter.

{¶ 28} Unlike the *Sarkar* case, the parties herein believed they were married in accordance with Bangladesh law and Mohammedan law. They participated in a marriage ceremony that included a proposal and an acceptance and the solemnization in the presence of witnesses.[4] We find husband's assertions of fraud in this matter are inapposite. We also reject husband's argument against the trial court's consideration of Mulla's Mohammedan Law, Section 252. The evidence

---

[4] Several witness statements were provided that verified the solemnization was in accordance with the law of Bangladesh. Also, Mawlana Kofiul Ahmed, who solemnized the marriage, attested that "[the] marriage contract agreed upon by a telephone conversation is valid in Bangladesh and Bangladesh government approved this marriage as it was conducted as per the law of Bangladesh and conditions of sharia law requirements."

establishes that the parties had a prolonged and relatively continuous cohabitation for over 12 years, they held themselves out as husband and wife, they consummated the marriage, and they had a child together. Under the applicable laws, proof of a valid registration was not required and the alleged lack of a valid registration did not invalidate the marriage. We need not dwell on other exhibits that have been submitted and reviewed, and we are not persuaded by any other arguments raised.

{¶ 29} Husband proceeds to argue that the trial court erred by applying the Muslim Sharia Law of Bangladesh because he was a resident of the United States and not a Bangladesh resident at the time of the 2005 telephonic marriage ceremony. In support of this argument, he cites to the Muslim Personal Law (Shariat) Application Act, 1937, which makes "provision for the application of the Muslim Personal Law (Shariat) to Muslims in Bangladesh" and states that "[i]t extends to the whole of Bangladesh." While husband refers to language referencing a "resident of Bangladesh" he cites no authority or logical reason to limit the Muslim Sharia Law to only residents of Bangladesh. Further, as argued by wife, subsequent legislative enactments to the 1937 Act, including the 1961 Family Laws and the 1974 Registration Act, are indicative of including "Muslim citizens of Bangladesh wherever they may be" and husband availed himself of these laws. Additionally, the expert legal opinions provided by wife support the conclusion that the marriage between the parties was valid.

{¶ 30} Husband further claims that the trial court erred by recognizing a transnational telephonic marriage solemnization despite the lack of any authorizing

provision of Bangladesh law or Muslim law.  However, as stated in the legal opinion of Mahmud & Bhuiyan Barristers & Advocates, under Bangladesh law or Mohammedan law, "there is no legal bar against such telephone marriage" and they "are common in Bangladesh, and since they have all the essentials of a valid marriage contract, they are valid under the laws of Bangladesh."  This is consistent with authority that "[m]arriage under the Mohammedan Law is a civil contract requiring no ceremony or special formality."  *Begum v. Hossain*, 40 CLC (AD) [5222], at ¶ 8.  Thus, as observed by Barrister Kahn, "[t]here are witness statements that this marriage was conducted according to Sharia law" and "the mere fact that the marriage was conducted through telephone will not invalidate this otherwise valid marriage."

{¶ 31}  Based on the facts and circumstances of this case, we find the trial court did not err in finding the marriage between husband and wife was valid.  After thoroughly reviewing the entire record, we conclude wife was entitled to summary judgment on the validity of the marriage.  We reject all other arguments raised by husband regarding the validity of the marriage.  The first five assignments of error are overruled.

### B. Property Division and Spousal Support

{¶ 32}  Assignments of error Nos. 6 through 8 challenge the spousal support, property division, and attorney fees provisions of the judgment entry of divorce.

{¶ 33} We review a trial court's determination in a domestic relations case for an abuse of discretion. *Booth v. Booth*, 44 Ohio St.3d 142, 144, 541 N.E.2d 1028 (1989).

> Since it is axiomatic that a trial court must have discretion to do what is equitable upon the facts and circumstances of each case, * * * it necessarily follows that a trial court's decision in domestic relations matters should not be disturbed on appeal unless the decision involves more than an error of judgment.

*Id.*, citing *Cherry v. Cherry*, 66 Ohio St.2d 348, 355, 421 N.E.2d 1293 (1981).

{¶ 34} First, husband argues that the trial court erred and abused its discretion in its calculation of the duration and amount of spousal support. He maintains that the spousal support should be reduced by the two-and-one half years of spousal support already paid since the parties separated in June 2019. He also argues that the trial court failed to consider relevant statutory factors under R.C. 3105.18(C) in determining the spousal-support award, such as wife's earning capacity and her lack of hardship.

{¶ 35} A trial court has broad discretion in awarding spousal support. *Williams v. Williams*, 8th Dist. Cuyahoga No. 103975, 2016-Ohio-7487, ¶ 9, citing *Gordon v. Gordon*, 11th Dist. Trumbull No. 2004-T-0153, 2006-Ohio-51, ¶ 13. "In determining whether to grant spousal support and in determining the amount and duration of the payments, the trial court must consider the factors listed in R.C. 3105.18." *Id.*, citing *Deacon v. Deacon*, 8th Dist. Cuyahoga No. 91609, 2009-Ohio-2491, ¶ 57. "The goal of spousal support is to reach an equitable result." *Id.*, citing *Kaechele v. Kaechele*, 35 Ohio St.3d 93, 96, 518 N.E.2d 1197 (1988).

"Courts are not required to order the commencement of spousal support as of the de facto termination date of the marriage." *Id.* at ¶ 26, citing *Saks v. Riga*, 8th Dist. Cuyahoga No. 101091, 2014-Ohio-4930, ¶ 85; *Best v. Best*, 10th Dist. Franklin No. 11AP-239, 2011-Ohio-6668, ¶ 31. Nothing in R.C. 3105.18 requires the court to use a de facto termination date in determining spousal support. Further, "even if the trial court would have used the de facto termination date for purposes of spousal support, the duration of the marriage is only one factor to consider when determining what amount of spousal support is appropriate under R.C. 3105.18(C)(1)." *Id.* at ¶ 27.

{¶ 36} Moreover, although R.C. 3105.171(A)(2) permits a court to use a de facto termination date in making the division of marital property, "[t]he date of the final hearing in a divorce proceeding is presumed to be the termination date of the marriage, unless the court determines that the use of that date would be inequitable in determining marital property." *Kobal v. Kobal*, 2018-Ohio-1755, 111 N.E.3d 804, ¶ 19 (8th Dist.), citing R.C. 3105.171(A)(2). Although a de facto date may be used where reasonable under the facts and circumstances presented in a particular case, "[t]he trial court has broad discretion in choosing the appropriate marriage termination date and this decision should not be disturbed on appeal absent an abuse of that discretion." *Id.*, citing *Berish v. Berish*, 69 Ohio St.2d 318, 321, 432 N.E.2d 183 (1982). A de facto date should not be used unless it is shown to be appropriate under the totality of the circumstances and should not be based only on the fact that one spouse has vacated the marital home. *Brown v. Brown*, 2014-Ohio-

2402, 14 N.E.3d 404, ¶ 9 (8th Dist.), citing *O'Brien v. O'Brien*, 8th Dist. Cuyahoga No. 89615, 2008-Ohio-1098, ¶ 40.

{¶ 37} In this case, the trial court determined that the duration of the marriage was over 16 years, from August 22, 2005, until August 24, 2021, and the court ordered that husband shall pay spousal support to wife in the sum of $2,800 per month, plus a 2 percent processing charge, for a term of 64 months commencing August 24, 2021.

{¶ 38} R.C. 3105.18(C)(1) sets forth the factors a court must consider when determining whether spousal support is appropriate and reasonable and in determining the amount and duration of spousal support. Contrary to husband's argument, the record reflects that the court considered the statutory factors in determining an appropriate and reasonable amount of spousal support. The trial court stated in the judgment entry that it considered "all of the factors set forth in [R.C.] 3105.18(C)(1)" and specifically noted factors supporting the award, stating as follows:

> The Court finds the following factors support this award: the disparity in income between the parties, the relative earning abilities between the parties, the duration of the marriage, and the relative assets and liabilities of the parties, including but not limited to any court-ordered payments by the parties, and any other factor that the court expressly finds to be relevant and equitable.
>
> The Court finds that Defendant has obtained tenure at a prestigious university and has secure employment. Plaintiff is on staff but does not enjoy the same protection as a tenured position provides. Defendant earns over triple the amount of salary the Plaintiff does. Defendant strenuously sought reduction in his temporary support payments without disclosing that he had received a significant increase

in income. Through testimony and evidence presented at trial, Defendant clearly attempted to micromanage every financial decision the Plaintiff made during their marriage.

{¶ 39} Husband claims the trial court failed to consider wife's earning capacity and ignored certain testimony from husband about wife's lack of effort to apply for a job to increase her income and ignored the lack of hardship on wife. The record reflects that husband is a tenured professor and earned $162,003 in 2020, while wife earned $49,878 as a biostatistician at the same university. Wife testified that she has a master's degree in biostatistics, which is required for her current position, and that she applied for a biostatistician position at the Cleveland Clinic in 2019 but did not get the job. Other testimony and evidence were presented upon which the trial court was able to consider all of the relevant factors and weigh the need for spousal support against the ability to pay.

{¶ 40} The trial court heard the testimony that was provided and stated it had considered all of the statutory factors, including the relative earning abilities between the parties. The court was not required to comment on each factor. *See Williams,* 8th Dist. Cuyahoga No. 103975, 2016-Ohio-7487, at ¶ 10. It is apparent that the trial court considered the totality of the evidence presented, and the judgment entry demonstrates that it considered all of the relevant factors. Although husband may disagree with the amount and duration of the spousal-support award, we do not find that the trial court abused its discretion under the facts and circumstances presented.

{¶ 41} Next, husband argues that the trial court failed to consider relevant factors under R.C. 3105.171 concerning property division and erred in determining the award of retirement and savings funds that are to be transferred to wife. "In any divorce action, the starting point for a trial court's analysis is an equal division of marital assets." *Neville v. Neville*, 99 Ohio St.3d 275, 2003-Ohio-3624, 791 N.E.2d 434, ¶ 5, citing R.C. 3105.171(C)(1). However, pursuant to R.C. 3105.171(C)(1), "[i]f an equal division of marital property would be inequitable, the court * * * shall divide it between the spouses in the manner the court determines equitable." In making this determination, "the court shall consider all relevant factors," including those set forth in R.C. 3105.171(F).

{¶ 42} The record herein shows that the court considered all relevant factors to achieve an equitable property division. The court recognized that the parties were married over 16 years and that the primary assets of the marriage were marital bank accounts and their respective retirement accounts. The judgment includes the division of real property, personal property, automobiles, debts, bank accounts, and retirement accounts.

{¶ 43} In awarding wife an additional $25,000 from husband's portion of the division of bank account funds, the court indicated this was to compensate wife for funds husband transferred from a marital bank account into his own bank account without wife's knowledge or consent. The trial court found wife's testimony concerning the marital account to be credible. The trial court also noted that husband leased a more extravagant vehicle and had continued to make his lease

payments from the marital bank account. Additionally, the trial court found "[wife] is entitled to half of all monies accrued in [husband's] retirement account(s) during the marriage." The record reflects that husband had a much larger retirement account. "In general, pension and retirement benefits acquired by a spouse during the marriage are deemed marital assets that are subject to division." *Neville* at ¶ 6, citing *Erb v. Erb*, 75 Ohio St.3d 18, 20, 661 N.E.2d 175 (1996).

{¶ 44} The trial court determined that the "division of property, though not equal, is equitable" and made specific findings regarding husband's conduct during the course of the marriage. Among other findings, the trial court found that during the marriage, husband questioned wife about every purchase she made over $30, that he moved funds from a bank account without wife's knowledge and consent, that he attempted to move available income into his retirement account, that he traveled to Bangladesh at least twice regarding divorce proceedings he initiated there, and that he did not think wife was entitled to any of the funds he earned or the parties saved during the marriage. The trial court's findings are supported by the record, and we find no abuse of discretion with the trial court's equitable division of property.

{¶ 45} Next, husband claims the trial court abused its discretion in awarding attorney fees to wife and failed to decide the reasonableness of the attorney-fee award. The judgment entry reflects that the trial court's determination that wife is entitled to some attorney fees was made pursuant to R.C. 3105.73(A), which provides:

In an action for divorce, * * * a court may award all or part of reasonable attorney's fees and litigation expenses to either party if the court finds the award equitable. In determining whether an award is equitable, the court may consider the parties' marital assets and income, any award of temporary spousal support, the conduct of the parties, and any other relevant factors the court deems appropriate.

{¶ 46} The statute requires an award to be "equitable" in light of the permissive factors. *Moore v. Moore*, 10th Dist. Franklin No. 21AP-276, 2022-Ohio-1862, ¶ 100. The trial court made the proper considerations and considered relevant factors in awarding reasonable attorney fees. The court found in part as follows:

While the divorce was pending, [wife's] scrupulous adherence to a strict budget allowed her to pay attorney fees, pay off her Nissan, pay all of her household bills, and still save a small amount of money. [Husband], however, leased an unnecessary larger apartment, leased a Mercedes, and felt the need to supplement his income from the parties' marital bank account.

After noting the amount of each party's attorney fees, which was nearly the same, the trial court ordered husband "to pay $33,000 for [wife's] remaining attorney fees." Upon the record before us, we find no abuse of discretion with the attorney-fee award. Assignments of error Nos. 6 through 8 are overruled.

{¶ 47} Finally, under his ninth assignment of error, husband claims the trial court exhibited bias by failing to rule on his motion for a partial stay of the court's award pending the appeal. We find no reversable error occurred.

{¶ 48} We have thoroughly reviewed the issues raised and the record before us. We are not persuaded by any other argument not specifically addressed herein.

{¶ 49} Judgment affirmed.

It is ordered that appellee recover of appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to said court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
SEAN C. GALLAGHER, ADMINISTRATIVE JUDGE

EILEEN A. GALLAGHER, J., CONCURS WITH SEPARATE CONCURRING OPINION;
ANITA LASTER MAYS, J., CONCURS AND CONCURS WITH THE SEPARATE CONCURRING OPINION OF EILEEN A. GALLAGHER, J.

EILEEN A. GALLAGHER, J., CONCURRING:

{¶ 50} I concur with the decision issued by this court and write separately to express my incredulity with appellant's position that there was no legal marriage between himself and his ex-wife.  I am flummoxed by his assertion.

{¶ 51} As appellant suggests that there was no legal marriage, then I would suggest that there was fraud committed by him against the United States of America and his employer, Case Western Reserve University.

{¶ 52} Appellant secured entry into this country, albeit through Canada for reasons which are unclear, for his *spouse*.  Appellant and his spouse filed joint tax returns thereby utilizing the system in that respect.  Appellant and his spouse took

advantage of his employer, Case Western Reserve University, to avail themselves of tuition benefits for spouses of employees.

{¶ 53} I find that for appellant to now argue that there was no valid marriage is staggering.